UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TWENTY-FIRST SECURITIES
CORPORATION,

           Plaintiff,

-against-

DR. BYRON CRAWFORD,

           Defendant.

<u>COMPLAINT</u>

Case No. _____



Plaintiff Twenty-First Securities Corporation ("Twenty-First"), by its attorneys, Kaufmann Gildin Robbins & Oppenheim LLP, for its complaint against Defendant Dr. Bryon Crawford ("Crawford"), respectfully alleges as follows:

### NATURE OF ACTION

1.     This is an action to enjoin an arbitration that Defendant Crawford initiated against Plaintiff Twenty-First before the Financial Industry Regulatory Authority ("FINRA") on or about July 18, 2011, captioned *Dr. Byron Crawford v. Twenty-First Securities Corporation*, FINRA No. 11-02801 (the "FINRA Arbitration"). The claims at issue are contained in Crawford's Statement of Claim, attached hereto as Exhibit A.

2.     In the FINRA Arbitration, Crawford seeks to recover compensatory damages of at least $6,000,000; lost opportunity costs; fees, commissions or other remuneration paid to Twenty-First by Crawford; costs; interest; punitive damages; and, attorneys' fees. These purported damages stem from Crawford's allegation that Twenty-First marketed and sold to Crawford an investment in 1861 Capital Discovery Domestic Fund, LP ("The 1861 Fund"); that Crawford invested $6,000,000 in The 1861 Fund; and, that Crawford lost a substantial portion of his $6,000,000 investment in The 1861 Fund.

3. Because Crawford is not, and has never been, a customer of Twenty-First and because there is no agreement between the parties to arbitrate any dispute, FINRA has no jurisdiction over the dispute and this Court should declare that the dispute is not arbitrable and enjoin the FINRA Arbitration.

## THE PARTIES

4. Plaintiff Twenty-First is a corporation organized and existing under the laws of the State of New York, with its principal place of business in New York, New York.

5. Defendant Crawford is an individual who resides in, and is a citizen of, the State of California.

## JURISDICTION AND VENUE

6. This is an action for declaratory judgment pursuant to 28 U.S.C. §2201 *et seq.* and Federal Rule of Civil Procedure 57 and for injunctive relief pursuant to Federal Rule of Civil Procedure 65(a).

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because the parties are of diverse citizenship and the amount in controversy, exclusive of interest and costs, exceeds $75,000. Specifically, the FINRA Arbitration seeks damages in excess of $6,000,000.

8. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §1331 because this action arises under federal law.

9. This Court has personal jurisdiction over Crawford because this lawsuit arises out of specific activities undertaken by Crawford within the Southern District of New York including, but not limited to: (i) filing the FINRA Arbitration with FINRA, which is headquartered in New York, New York; (ii) telephone conversations and e-mail correspondence

with 1861 Capital Management LLC representatives in New York, New York; and, (iii) telephone conversations and e-mail correspondence with Twenty-First representatives in New York, New York.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(a)(2) because Plaintiff is located in this judicial district and a substantial part of the events giving rise to this lawsuit occurred within this judicial district.

## FACTUAL BACKGROUND

11. Between 2004 and 2007, Crawford and his wife had a series of conversations with Twenty-First's President, Robert Gordon. These conversations were initiated by Crawford as a result of his review of an article in *Forbes* magazine in which Mr. Gordon was quoted.

12. In or about May 2006, Crawford asked Twenty-First and Mr. Gordon about high income yielding investments. In November 2006, Mr. Gordon forwarded to Crawford's wife certain materials prepared by 1861 Capital Management LLC ("1861 Capital") concerning The 1861 Fund, and advised Crawford to contact 1861 Capital for more information about The 1861 Fund.

13. Thereafter, queries by Crawford concerning The 1861 Fund or 1861 Capital were referred by Twenty-First to representatives of 1861 Capital.

14. On or about February 28, 2007, Rahn & Bodmer, a Zurich-based investment firm, made an investment in the amount of $6,000,000 in The 1861 Fund, purportedly as Crawford's nominee and agent (the "Investment").

15. In connection with the Investment, Rahn & Bodmer executed a Subscription Agreement to Become a Limited Partner in Series I and Series II Interests, dated February 27, 2007 ("Subscription Agreement"); a Limited Partnership Agreement of 1861 Capital Fund, LP,

162104                                                             3

dated as of August 1, 2006 ("Limited Partnership Agreement"); and, a Disclosure Statement, dated June 7, 2007 ("Disclosure Statement").

16. The Disclosure Statement executed by Rahn & Bodmer disclosed the nature of the relationship between Twenty-First and 1861 Capital, and stated, in pertinent part:

> TFSC is not an agent or employee of 1861 Capital and is not authorized to make representations concerning 1861 Capital or the Capital Fund other than those set forth in the Fund's Confidential Offering Memorandum. TFSC is not involved or in any manner responsible for the management, operations, investments or performance of the Fund....

17. Twenty-First is not and has never been an agent or employee of 1861 Capital and is not and has never been authorized to make representations concerning 1861 Capital or The 1861 Fund other than those set forth in The 1861 Fund's Confidential Offering Memorandum.

18. Twenty-First is not and has never been involved with or in any manner responsible for the management, operations, investments or performance of The 1861 Fund or 1861 Capital.

19. Upon information and belief, in June 2008, Rahn & Bodmer liquidated the Investment and received approximately $3,311,431 from 1861 Capital upon liquidation.

20. Crawford is not, and never has been, a customer of Twenty-First; has never maintained a brokerage account with Twenty-First; and, has never signed any agreement that creates a broker-customer relationship with Twenty-First.

21. Twenty-First never purchased any securities, including the Investment, on behalf of Crawford.

22. Rahn & Bodmer is not, and never has been, a customer of Twenty-First; has never maintained a brokerage account with Twenty-First; and, has never signed any agreement that creates a broker-customer relationship with Twenty-First.

23. Twenty-First never purchased any securities, including the Investment, on behalf of Rahn & Bodmer.

24. Twenty-First never entered into any agreement with Crawford or Rahn & Bodmer to arbitrate any disputes, including without limitation any disputes arising from the Investment.

25. On or about July 18, 2011, Crawford filed a Statement of Claim with FINRA, instituting arbitration proceedings against Twenty-First. Twenty-First's Answer to Crawford's Statement of Claim is due on September 16, 2011.

26. The FINRA Arbitration primarily relates to Crawford's claim that his Investment in The 1861 Fund did not perform as anticipated.

27. The Statement of Claim alleges that Twenty-First "acted as [Crawford's] stockbroker and agent in soliciting and recommending securities to [Crawford]" and failed to "properly present a fair and balanced sales presentation to [Crawford] that accurately described the risk of a significant loss of principal." *Statement of Claim*, ¶18, 6. In addition, the Statement of Claim alleges that "at no time did Twenty-First ever explain to or advise Claimant that The 1861 Fund would not adhere to a risk management strategy, and that if it failed to do so, the results could be disastrous." *Statement of Claim*, ¶6.

28. In short, the Statement of Claim contends that Twenty-First made misrepresentations that induced Crawford to make the Investment, and that such conduct constitutes breach of fiduciary duty, breach of contract, constructive fraud, failure to supervise, and violation of federal and state securities laws, NYSE, NASD, and FINRA rules. Crawford seeks damages of not less than the $6,000,000 value of the Investment, minus residual value, plus interest; disgorgement of the commissions, fees and benefits paid to Twenty-First; lost opportunity costs; punitive damages; costs; and, attorneys' fees.

29. Crawford's Statement of Claim in the FINRA Arbitration does not allege that Crawford: (i) opened or maintained an account with Twenty-First; (ii) executed a customer agreement or arbitration agreement with Twenty-First; (iii) purchased or placed any of the securities at issue with Twenty-First; or, (iv) suffered any losses in any Twenty-First account.

### FIRST CLAIM FOR RELIEF
### (Declaratory Judgment)

30. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 29 as if fully set forth herein.

31. Twenty-First has not entered into any agreement with Crawford or his putative nominee, Rahn & Bodmer, pursuant to which they agreed to arbitrate any disputes.

32. Pursuant to Rule 12200 of FINRA's Code of Arbitration Procedure for Customer Disputes, which governs the arbitrability of disputes by a FINRA arbitration panel, parties must arbitrate disputes only where each of the following conditions are met: (i) arbitration is either (a) required by agreement or (b) requested by the customer; (ii) the dispute is between a customer and a member or associated person of a member; and (iii) the dispute arises in connection with the business activity of the member or the associated person. These conditions are not met with respect to the dispute between Twenty-First and Crawford in connection with which Crawford commenced the FINRA Arbitration.

33. Crawford is not a "customer" of Twenty-First, as that term is used in FINRA Rule 12200 and is also not a customer of "an associated person" of Twenty-First. Accordingly, Crawford's dispute is not arbitrable.

34. Twenty-First is compelled to seek relief in this Court because (i) the FINRA Arbitration panel is not authorized to compel Crawford to demonstrate that the dispute is in fact arbitrable pursuant to arbitration (see FINRA Rule 12504(a)); and (ii) it is the Court, not the

162104

6

40. Twenty-First has no adequate remedy at law because there is no challenge to arbitrability available after the arbitration proceeding takes place.

41. Crawford will suffer no irreparable harm in the event an injunction issues.

42. The balance of equities weighs in favor of an injunction.

43. The public interest would be served by enjoining Crawford from pursuing his claims against Twenty-First in the FINRA Arbitration since Twenty-First is not legally bound to arbitrate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order:

1. Declaring that (a) Crawford is not a customer of Twenty-First; and (b) FINRA has no jurisdiction to arbitrate the FINRA Arbitration;

2. Preliminarily and permanently enjoining Crawford from pursuing any claims against Twenty-First in the FINRA Arbitration;

3. Awarding Plaintiff costs of suit; and

4. Granting such other relief as may be just and proper.

Dated: New York, New York  
September 13, 2011

KAUFMANN GILDIN ROBBINS  
& OPPENHEIM LLP

By: /s/ Daniel Gildin  
Daniel Gildin (DG9555)  
Kevin M. Shelley (KS8149)  
777 Third Avenue  
New York, New York 10017  
212.755.3100  
dgildin@kaufmanngildin.com  
kshelley@kaufmanngildin.com

*Attorneys for Plaintiff*  
*Twenty First Securities Corporation*

162104

8

# EXHIBIT A

Philip M. Aidikoff, Esq. (Cal. Bar #65014)
Robert A. Uhl, Esq. (Cal. Bar #75154)
Ryan K. Bakhtiari, Esq. (Cal. Bar #199147)
**AIDIKOFF, UHL & BAKHTIARI**
9454 Wilshire Boulevard, Suite 303
Beverly Hills, California 90212
Telephone: (310) 274-0666
Telecopier: (310) 859-0513

BEFORE THE

FINANCIAL INDUSTRY REGULATORY AUTHORITY

| | |
|---|---|
| DR. BYRON CRAWFORD, | CASE NO. 11-02801 |
| Claimant, | |
| vs. | STATEMENT OF CLAIM |
| TWENTY-FIRST SECURITIES CORPORATION, | |
| Respondent. | |

## REQUEST FOR AN ALL PUBLIC PANEL

Claimant requests an all public panel pursuant to FINRA Rule 12403 (b) and (d).

Claimant requests a hearing in Los Angeles, California where Claimant resides.

## REQUEST FOR EXPEDITED HEARING

Claimant seeks an expedited hearing pursuant to the Financial Industry Regulatory Authority's Dispute Resolution department's national program to expedite the administration of

arbitration proceedings in matters involving elderly or seriously ill parties[1] because Claimant Dr. Byron Crawford is sixty-eight (68) years old having been born on April 22, 1943. Claimant is entitled to a speedy hearing and requests the scheduling of an initial pre-hearing conference as soon as possible.

## I.
## PARTIES

1.  Claimant Dr. Byron Crawford ("Claimant" or "Byron") is sixty-eight (68) years old having been born on April 22, 1943 and is a retired physician. All transactions in 1861 were authorized by Claimant through his nominee, Rahn & Bodmer.

3.  Respondent Twenty-First Securities Corporation ("Twenty-First" or "Respondent") (CRD #14461), is a broker-dealer headquartered in New York, New York with offices throughout the United States and is a member firm of FINRA.

## II.
## WRONGFUL CONDUCT

5.  This case involves purchases of the 1861Capital Discovery Domestic Fund, LP ("1861"). Twenty-First marketed and sold 1861 to Claimant, as a low-risk municipal bond substitute.

6.  In truth, however, 1861 was a fund, better described as a leveraged municipal arbitrage fund. The 1861 strategy sought to arbitrage the spread between yields on municipal bonds, treasuries and swaps. At no time did Twenty-First properly present a fair and balanced sales presentation to Claimant that accurately described the risk of a significant loss of principal.

---

[1] *See* Notice to Parties - Expedited Proceedings for Elderly or Seriously Ill Parties, National Association of Securities Dealers Dispute Resolution, p. 1 (June 7, 2004).

Additionally, at no time did Twenty-First ever explain to or advise Claimant that 1861 would not adhere to a risk management strategy, and that if it failed to do so, the results could be disastrous. Despite all the representations and assurances of Twenty-First that Claimant's investment was low-risk, the truth was that the 1861 Funds did not have appropriate risk management practices in place.

14. Twenty-First knew and fully understood that Claimant would not have made the Investment if he understood the Investment was risky or there was any possibility that he would lose a significant portion of his original principal amount invested. Twenty-First also knew that Claimant trusted and relied upon Twenty-First to make sure that the Investment was suitable for Claimant and in accordance with his investment goals for the money invested. By leading Claimant to believe that the Investment was low-risk, Twenty-First betrayed that trust.

15. In reliance on Respondent's representations, Claimant made the following Investment:

| ACCOUNT NAME | INVESTMENT | DATE | AMOUNT |
|---|---|---|---|
| All transactions in 1861 were authorized by Claimant through his nominee, Rahn & Bodmer | 1861Capital Discovery Domestic Fund, LP | February 28, 2007 | $6,000,000 |
| Total | | | $6,000,000 |

16. As described in detail below, Twenty-First's mishandling of Claimant's Investment constitutes breach of fiduciary duty, breach of contract, constructive fraud, failure to supervise and violation of federal and state securities laws, NYSE, NASD, and FINRA rules. Claimant seeks recovery of damages in an amount according to proof but not less than $6,000,000 minus

residual value and/or principal redeemed, plus interest, and disgorgement of the commissions, fees, and benefits paid to Twenty-First, as well as reasonable attorney's fees, and punitive damages to punish and deter the firm's wrongful conduct.

## III.
## BREACH OF FIDUCIARY DUTY

17. Claimant re-alleges and incorporates by reference paragraphs 1 through 16, above.

18. By reason of the fact that Respondent acted as Claimant's stockbroker and agent in soliciting and recommending securities to Claimant, Respondent owed a fiduciary duty to Claimant, their principal, to act diligently and in the utmost good faith, and to act in Claimant's best interest.

19. As a result of Respondent's breach of its fiduciary duty to Claimant, Claimant was lulled into a false sense of security that Respondent would truthfully advise Claimant regarding the Investment, and recommend purchases that were suitable for Claimant, and for which Respondent had performed the appropriate due diligence.

20. Respondent breached its fiduciary duties owed to Claimant by:

   a. Failing to recommend suitable securities;
   b. Failing to conduct proper due diligence on the Investment;;
   c. Failing to advise Claimant that they had not conducted the proper due diligence prior to the sale of the securities;
   d. Failing to monitor the true value and volatility of the Investment they recommended to Claimant;
   e. Failing to provide Claimant with all material information relating to Investment recommended to Claimant by Respondent or requested by Claimant;
   f. Withholding material information and making material misrepresentations and omissions to Claimant, including but not limited to, the true value, volatility and risk of loss of Investment; and
   g. Failing to present a fair and balanced sales presentation regarding 1861 to Claimant that accurately described the risk of a significant loss of principal.

4

21.     As a result of Respondent's breach of its fiduciary duty to Claimant, Claimant has suffered damages in an amount according to proof but not less than $6,000,000 minus residual value and/or principal redeemed.

22.     In committing the acts described in this complaint, Respondent acted despicably and in conscious disregard of their duty to Claimant because Respondent misrepresented, deceived, and/or concealed from Claimant material facts known to them with the intention of wrongfully lulling Claimant into a false sense of security that Respondent would properly advise Claimant of the due diligence that had been conducted regarding the Investment and would only recommend and solicit suitable Investments and investment strategies for Claimant. The conduct of Respondent warrants an assessment of punitive and exemplary damages in an amount appropriate to punish Respondent and deter others from engaging in similar wrongful conduct.

## IV.
## BREACH OF WRITTEN CONTRACT

23.     Claimant re-alleges and incorporates by reference paragraphs 1 through 22, above.

24.     In the present case, Claimant entered into a written contract with Twenty-First at the time his account was opened. Implied in every written contract is the covenant of good faith and fair dealing. The contract between Claimant and Respondent provides that a brokerage firm will supply brokerage services in a legal, ethical, and professional manner and in accordance with applicable industry rules and regulations. Claimant performed by paying Twenty-First for the services.

25. Twenty-First breached this contract to the detriment of Claimant by violating various industry conduct rules and by recommending the unsuitable Investment and thereby caused Claimant damages. Therefore, Twenty-First is liable to Claimant for breach of contract.

26. As a result of Respondent Twenty-First's breach of written contract, Claimant has suffered damages in an amount according to proof but not less than $6,000,000 minus residual value and/or principal redeemed.

## V.
## CONSTRUCTIVE FRAUD

27. Claimant re-alleges and incorporates by reference paragraphs 1 through 26, above.

28. Twenty-First, a fiduciary to Claimant, failed to share material information as set forth above, as a result of which Claimant suffered damages. Therefore, Twenty-First is liable to Claimant for constructive fraud. By reason of the fact that Respondent Twenty-First acted as Claimant's broker/dealer, agent and fiduciary in executing the transactions in Claimant's accounts, said Respondent owed a duty to Claimant to act diligently and in the utmost good faith and to act in the best interest of Claimant.

29. As a result of Respondent Twenty-First constructively defrauding Claimant, Claimant was induced to purchase and hold the unsuitable Investment. As set forth above, Twenty-First, acting with intent, in order to induce Claimant to make the Investment, made false representations and omitted to disclose material facts – including, without limitation, that Claimant's account would be handled in accordance with their objective of safety, without disclosure of the material facts and risks noted herein. Twenty-First held itself as a firm upon whom Claimant should rely to act in his best interest. Claimant justifiably relied on Twenty-

First's false representations and omissions and suffered damages as a result. By breaching its fiduciary duties to Claimant, as set forth above, Twenty-First engaged in constructive fraud.

30. As a result of Respondent Twenty-First's failure to disclose material information, Claimant has suffered damages in an amount according to proof but not less than $6,000,000 minus residual value and/or principal redeemed. In committing the acts described in this complaint, Respondent Twenty-First acted despicably and in conscious disregard of its duty to Claimant because said Respondent intentionally misrepresented, deceived, and/or concealed from Claimant material facts known to them with the intention of wrongfully inducing Claimant make the Investment. The conduct of Respondent Twenty-First warrants an assessment of punitive and exemplary damages in an amount appropriate to punish said Respondent and deter others from engaging in similar wrongful conduct.

## VI.
## VIOLATIONS OF FEDERAL AND STATE SECURITIES LAWS: FINRA, NASD AND NYSE RULES

31. Claimant re-alleges and incorporates by reference paragraphs 1 through 30, above.

32. Respondent's wrongful conduct, as alleged above, constitutes violations of federal and state securities law, including but not limited to; Sections 10 and 20 of the Securities and Exchange Act of 1934; Rule 10(b)-5 promulgated there under; Sections 12(2) and 15 of the Securities Act of 1933; and Section 25100 *et. seq.* of the California Corporate Securities Law of 1968. Additionally, the rules of the self-regulatory organizations such as the NASD (now FINRA) and New York Stock Exchange "set out general standards of industry conduct" and are evidence of the standard of care by which broker-dealers must abide in dealing with their clients. Twenty-First, as a member of the FINRA and NYSE are subject to the Conduct Rules of the

NASD, FINRA and the NYSE and as such, were obligated to provide services to Claimant in accordance with these Rules. Furthermore, Twenty-First was also contractually obligated to abide by industry rules, standards, and practices. By its conduct outlined above, Twenty-First failed to abide by many of these Rules, including the following:

    a) FINRA Rule 2010 (members shall observe high standards of commercial honor and just and equitable principles of trade);

    b) NASD Conduct Rule 2310 (Suitability);

    c) NASD Conduct Rule 3010 (supervision and diligence as to accounts and suitability);

    d) NYSE Rule 401 (members shall adhere to principles of good business practice); and

    e) NYSE Rule 405 (members must exercise due diligence to learn essential facts relative to every customer and account).

33. Specifically, Twenty-First failed to abide by these industry rules in the handling and supervision of Claimant's Investment by recommending and effectuating unsuitable transactions, and by misrepresenting and omitting to disclose material facts regarding the Investment. Twenty-First also failed to adequately train and educate its employees regarding the various risks associated with the Investment, and the material developments adversely affecting the municipal bond market in general and the Investment in particular discussed herein.

## VII.
## FAILURE TO SUPERVISE

34. Claimant re-alleges and incorporates by reference paragraphs 1 through 33, above.

35. Pursuant to Rule 3010 of the NASD Conduct Rules, Twenty-First had a duty to diligently properly train, educate and supervise its registered representatives concerning the

8

various risks associated with the hedge fund and the material developments adversely affecting the municipal bond market beginning in the summer of 2007 and continuing through early 2008. Twenty-First failed to exercise this duty. Twenty-First also failed to take any steps to ensure that its representatives made Claimant aware of the risks attendant to his Investment in 1861.

36. Claimant also expects to show that Twenty-First violated many of its own internal rules regarding supervisory duties with respect to the handling of Claimant's account. Had Twenty-First properly exercised its supervisory duties, it would have realized, among other things, the Investment in 1861 was not suitable for Claimant. Twenty-First is therefore secondarily liable for it's failure to adequately supervise the handling of Claimant' account. Moreover, the mismanagement of the Investment is evidence that Twenty-First failed to establish and operate its supervisory system properly. Therefore, Twenty-First is liable to Claimant for failing to supervise its employees. As a result of Respondent Twenty-First's failure to supervise, Claimant has suffered damages in an amount according to proof but not less than $6,000,000 minus residual value and/or principal redeemed.

## VIII.
## RESPONDEAT SUPERIOR

37. Claimant re-alleges and incorporates by reference paragraphs 1 through 36, above.

38. Under respondeat superior, an employer is vicariously liable for the torts of his employees committed within the scope of the employment. Here, Twenty-First's dealings with Claimant were conducted by various persons employed by Twenty-First. Such persons' conduct was in furtherance of Twenty-First's business. Therefore, Twenty-First is liable for any misconduct and breaches of duty under the common law theory of *respondeat superior*.

39.  As a result of the wrongful acts of Respondent Twenty-First's employees, Claimant has suffered damages in an amount according to proof but not less than $6,000,000 minus residual value and/or principal redeemed.

## IX.
## FINANCIAL ABUSE

40.  Claimant re-alleges and incorporates by reference paragraphs 1 through 39, above.

41.  Respondent violated California Welfare & Institutions Code, Section 15600 *et seq.*, which provides for the recovery of attorney's fees and costs, wherein an "elder", meaning any person residing in the State of California who is sixty-five (65) years of age or older, who has been subjected to "fiduciary abuse" meaning a situation in which any person who stands in a position of trust to an elder, "takes, secretes or appropriates their money or their property, to any use or purpose not in the due and lawful execution of his or her trust" thus entitling Claimant to recover his attorney's fees and costs (*secs.* 15610.27, 15610.30, 15657, 15657.5, and 15657.1).

WHEREFORE, Claimant requests damages and recovery against Respondent, as follows:

1.  General and compensatory damages in an amount according to proof but not less than $6,000,000;

2.  Lost opportunity costs in an amount according to proof;

3.  Fees, commissions or other remuneration paid to Twenty-First by Claimant;

4.  Cost of proceedings;

5.  Punitive damages in an amount according to proof;

6.  Interest at the legal rate on all sums recovered;

7.  Attorneys' fees and costs;

8. Rescission;

9. Consequential damages; and

10. Such other and further relief as this panel deems just and appropriate.

Dated: July 18, 2011

AIDIKOFF, UHL & BAKHTIARI

By: _____
Philip M. Aidikoff, Esq.
Attorney for Claimant,
Dr. Byron Crawford

11