JUDGE PAULEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TWENTY-FIRST SECURITIES
CORPORATION,

                    **Plaintiff,**

  -against-

DR. BYRON CRAWFORD,

                    **Defendant.**

Case No. 

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

Daniel Gildin (DG9555)
Kevin M. Shelley (KS8149)
KAUFMANN GILDIN ROBBINS
& OPPENHEIM LLP
777 Third Avenue
New York, New York 10017
212.755.3100
dgildin@kaufmanngildin.com
kshelley@kaufmanngildin.com

*Attorneys for Plaintiff*
*Twenty-First Securities Corporation*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

FACTS AND BACKGROUND ............................................................................................... 2

ARGUMENT ........................................................................................................................... 5

    I.    TWENTY-FIRST IS LIKELY TO SUCCEED ON THE MERITS
        BECAUSE THE DISPUTE BETWEEN TWENTY-FIRST AND
        CRAWFORD IS NOT SUBJECT TO FINRA ARBITRATION ............................................ 7

        A.   Crawford is not a "Customer" of Twenty-First as that Term
            Is Defined in the FINRA Rules ......................................................................... 8

    II.   TWENTY-FIRST WILL SUFFER IRREPARABLE HARM IF CRAWFORD
        IS NOT ENJOINED FROM PROCEEDING WITH THE ARBITRATION ....................... 14

    III.  THE BALANCE OF THE HARDSHIPS TIPS DECIDEDLY IN
        TWENTY-FIRST'S FAVOR ............................................................................................ 15

CONCLUSION ...................................................................................................................... 17

### TABLE OF AUTHORITIES

**Cases**

*Bensadoun v. Jobe-Riat,*
  316 F.3d 171 (2d Cir. 2003) ........................................................... 7, 8, 9, 11, 14

*Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.,*
  598 F.3d 30 (2d Cir. 2010) ........................................................................ 5

*Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.,*
  2008 WL 4891229 (S.D.N.Y. 2008), *aff'd,* 598 F.3d 30 (2d Cir. 2010) ................. 10, 16

*Contemporary Fin. Solutions, Inc. v. Miller,*
  2007 WL 4197588 (D. Col. 2007) ............................................................... 13

*First Options of Chicago, Inc. v. Kaplan,*
  514 U.S. 938 (1995) ............................................................................. 7

*Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.,*
  264 F.3d 770 (8th Cir. 2001) ................................................... 8, 9, 11, 13

*Goldman Sachs & Co. v. Becker,*
  2007 WL 1982790 (N.D. Cal. 2007) ........................................................ 6, 8

*Herbert J. Simms & Co., Inc. v. Roven,*
  548 F.Supp.2d 759 (N.D. Cal. 2008) ....................................................... 5, 8

*Howsam v. Dean Witter Reynolds, Inc.,*
  537 U.S. 79 (2002) ............................................................................. 7

*Int'l Trust Co. of Bermuda, Ltd. v. Fahnstock & Co., Inc.,*
  1995 WL 606275 (S.D.N.Y. 1995) ............................................................ 15

*Interactive Brokers LLC v. Durand,*
  2009 WL 393827 (N.D. Ill. 2009) .......................................................... 5, 14

*J.P. Morgan Securities, Inc. v. Louisiana Citizens Prop. Ins. Corp.,*
  712 F.Supp.2d 70 (S.D.N.Y. 2010) ............................................................ 6

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,*
  596 F2d 70 (2d Cir. 1979) ..................................................................... 5

*John Hancock Life Ins. Co. v. Wilson,*
  254 F.3d 48 (2d Cir. 2001) ................................................................ 13, 14

*Malak v. Bear Stearns & Co., Inc.,*
  2004 WL 213014 (S.D.N.Y. 2004) .......................................................... 9, 10

*Merrill Lynch Inv. Managers v. Optibase, Ltd.,*
  337 F.3d 125 (2d Cir. 2003) .................................................................. 15

*Oppenheimer & Co. v. Neidhardt,*
  56 F.3d 352 (2d Cir. 1995) ................................................................... 10

*ProShares Trust v. Schnall,*
  695 F.Supp.2d 76 (S.D.N.Y. 2010) ................................................ 5, 8, 9, 12, 16

*Ross v. Am. Express Co.,*
  547 F.3d 137 (2d Cir. 2008) ................................................................... 7

*Royal Alliance Associates, Inc. v. Branch Ave. Plaza, L.P.,*
  587 F.Supp.2d 729 (E.D. Va. 2008) ........................................................... 5

*Sands Bros. & Co., Ltd. v. Ettinger,*
  2004 WL 541846 (S.D.N.Y. 2004) ............................................................ 10

*Tellium, Inc. v. Corning, Inc.,*
  2004 WL 307238 (S.D.N.Y. 2004) ............................................................ 15

*Tradescape.com v. Shivaran,*
  77 F.Supp.2d 408 (S.D.N.Y. 1999) ........................................................... 15

*UBS Securities LLC v. Voegeli,*
  684 F.Supp.2d 351 (S.D.N.Y. 2010), *aff'd,* 405 Fed. Appx. 550 (2d Cir. 2011) ...... 5, 9, 10, 11, 15, 16

*UBS Securities, LLC v. Voegeli,*
  405 Fed. Appx. 550 (2d Cir. 2011) ........................................................... 11

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,*
  363 U.S. 574 (1960) ............................................................................. 7

*Vestek Securities Corp. v. McWood,*
  280 F.3d 1078 (6th Cir. 2002)...............................................................................13, 14
*Westmoreland Cap. Corp. v. Findlay,*
  100 F.3d 263 (2d Cir. 1996).......................................................................................6
*WMA Securities, Inc. v. Ruppert,*
  80 F.Supp.2d 786 (S.D. Ohio 1999)..........................................................................13

<u>Statutes</u>
9 U.S.C. §2............................................................................................................................6
NASD Rule 10301...............................................................................................................13
Rule 65(a) of the Federal Rules of Civil Procedure .............................................................1

## PRELIMINARY STATEMENT

Plaintiff Twenty-First Securities Corporation ("Twenty-First") respectfully submits this memorandum of law in support of its motion pursuant to Rule 65(a) of the Federal Rules of Civil Procedure for an Order preliminarily enjoining Defendant Dr. Byron Crawford ("Crawford") from pursuing claims against Twenty-First made in a Financial Industry Regulatory Authority ("FINRA") arbitration proceeding he commenced on July 18, 2011, captioned *Dr. Byron Crawford v. Twenty-First Securities Corporation*, FINRA Case No. 11-02801 (the "FINRA Arbitration").[1]

Through this motion, Twenty-First seeks to preliminarily enjoin the FINRA Arbitration commenced by Crawford.  Crawford's claim relates to losses allegedly sustained by him as a result of his direct investment in a municipal arbitrage fund, 1861 Capital Discovery Domestic Fund, LP ("The 1861 Fund"), through an account maintained by Crawford with 1861 Capital Management LLC ("1861 Capital").[2]  Twenty-First has yet to appear in the arbitration and the response to Crawford's Statement of Claim is due on September 16, 2011.[3]  Because Twenty-First did not agree to arbitrate anything with Crawford and the applicable FINRA rules do not provide FINRA with the jurisdiction to arbitrate the instant dispute, the FINRA Arbitration should be enjoined.

Absent a contractual agreement to submit disputes to arbitration, a party may only compel FINRA arbitration where, among other things, the dispute is between a FINRA member and its "customer."  This condition is not met here.

---

[1] The claims at issue in the FINRA Arbitration are contained in the FINRA Arbitration Statement of Claim (the "Statement of Claim") which is attached as Exhibit A to the Declaration of Robert Gordon, dated September 13, 2011 ("Gordon Decl.").

[2] Although Crawford commenced the FINRA Arbitration personally, it appears that his putative "nominee," Zurich-based investment firm Rahn & Bodmer, actually made the investment in The 1861 Fund.

[3] In order to preserve its rights and avoid default in the FINRA Arbitration, Twenty-First also seeks a temporary restraining order staying the FINRA Arbitration pending the hearing of the motion for preliminary injunction.  See Declaration of Kevin M. Shelley, dated September 13, 2011 ("Shelley Decl.").

Crawford is not, and never has been, a customer of Twenty-First. He did not open a brokerage account with Twenty-First. Twenty-First never made any investments on Crawford's behalf. Nor did Twenty-First enter into any agreements pursuant to which Twenty-First would serve as his investment advisor, broker, or in any other capacity.

Instead, in response to any inquiry to Twenty-First concerning high-yield investment opportunities, Twenty-First merely referred Crawford to 1861 Capital and, thereafter, referred all communications from Crawford concerning his investment in The 1861 Fund to 1861 Capital. In fact, in a Disclosure Statement executed by Crawford's nominee, Crawford acknowledged that (i) Twenty-First was not an agent or employee of 1861 Capital and was not authorized to make representations concerning 1861 Capital or The 1861 Fund, other than those set forth in The 1861 Fund's Confidential Offering Memorandum; and (ii) Twenty-First was not involved with or in any manner responsible for the management, operations, investments or performance of The 1861 Fund.

Because FINRA has no jurisdiction over the parties' dispute, permitting Crawford to go forward with the arbitration will cause Twenty-First irreparable harm, and the balance of the hardships clearly tilts in favor of granting an injunction, this Court should enter an Order enjoining the FINRA Arbitration.

## FACTS AND BACKGROUND

The following summary of the relevant facts is derived from the Complaint and the Gordon Declaration.

Between 2004 and 2007, Crawford and his wife had a series of conversations with Twenty-First's President, Robert Gordon. These conversations were initiated by Crawford as a result of his review of an article in *Forbes* magazine in which Mr. Gordon was quoted. In or

about May 2006, Crawford or his wife asked Twenty-First and Mr. Gordon about high income yielding investments. In November 2006, Mr. Gordon arranged for delivery to Crawford's wife certain materials prepared by 1861 Capital Management LLC ("1861 Capital") concerning The 1861 Fund, and advised Crawford to contact 1861 Capital for more information about The 1861 Fund. Thereafter, queries by Crawford concerning The 1861 Fund or 1861 Capital were referred by Twenty-First to representatives of 1861 Capital.

On or about February 28, 2007, Rahn & Bodmer, a Zurich-based investment firm, made an investment in the amount of $6,000,000 in The 1861 Fund, purportedly as Crawford's nominee and agent (the "Investment"). In connection with the Investment, Rahn & Bodmer executed a Subscription Agreement to Become a Limited Partner in Series I and Series II Interests, dated February 27, 2007 ("Subscription Agreement"); a Limited Partnership Agreement of 1861 Capital Fund, LP, dated as of August 1, 2006 ("Limited Partnership Agreement"); and, a Disclosure Statement, dated June 7, 2007 ("Disclosure Statement"). *Gordon Decl.,* Exhibits. B-D.

The Disclosure Statement executed by Rahn & Bodmer disclosed the nature of the relationship between Twenty-First and 1861 Capital, and stated, in pertinent part:

> TFSC is not an agent or employee of 1861 Capital and is not authorized to make representations concerning 1861 Capital or the Capital Fund other than those set forth in the Fund's Confidential Offering Memorandum. TFSC is not involved or in any manner responsible for the management, operations, investments or performance of the Fund....

Twenty-First is not and has never been an agent or employee of 1861 Capital and is not and has never been authorized to make representations concerning 1861 Capital or The 1861 Fund other than those set forth in The 1861 Fund's Confidential Offering Memorandum.

Twenty-First is not and has never been involved with or in any manner responsible for the management, operations, investments or performance of The 1861 Fund or 1861 Capital.

Crawford is not, and never has been, a customer of Twenty-First; has never maintained a brokerage account with Twenty-First; and, has never signed any agreement that creates a broker-customer relationship with Twenty-First. Twenty-First never purchased any securities, including the Investment, on behalf of Crawford.

Rahn & Bodmer is not, and never has been, a customer of Twenty-First; has never maintained a brokerage account with Twenty-First; and, has never signed any agreement that creates a broker-customer relationship with Twenty-First. Twenty-First never purchased any securities, including the Investment, on behalf of Rahn & Bodmer. Twenty-First never entered into any agreement with Crawford or Rahn & Bodmer to arbitrate any disputes, including without limitation any disputes arising from the Investment.

On or about July 18, 2011, Crawford filed a Statement of Claim with FINRA, instituting arbitration proceedings against Twenty-First. Twenty-First's Answer to Crawford's Statement of Claim is due on September 16, 2011.

Crawford's Statement of Claim does not (and cannot) allege that the parties had any agreement to arbitrate, nor does it allege that Crawford was a "customer" of Twenty-First. However, the Statement of Claim does allege that Twenty-First "acted as Claimant's stockbroker and agent in soliciting and recommending securities to Claimant." *Statement of Claim*, ¶18. As a result, for purposes of this motion, Twenty-First will assume that Crawford contends that he is entitled to arbitrate the dispute because he is a "customer" of Twenty-First—which Twenty-First expressly denies. *Gordon Decl.*, par. 3-12.

## ARGUMENT

"For the last five decades, this circuit has required a party seeking a preliminary injunction to show '(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.,* 598 F.3d 30, 35 (2d Cir. 2010) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F2d 70, 72 (2d Cir. 1979)).

Federal courts routinely enjoin FINRA Arbitration proceedings rather than require a party to submit to arbitration to which it did not agree (either explicitly or pursuant to FINRA rules). *See, e.g., Citigroup,* 598 F.3d at 39-40 (affirming district court's decision to grant a preliminary injunction barring FINRA arbitration where there were "serious questions" concerning whether defendant was a customer of the plaintiff); *see also, UBS Securities LLC v. Voegeli,* 684 F.Supp.2d 351 (S.D.N.Y. 2010), *aff'd* 405 Fed. Appx. 550 (2d Cir. 2011) (enjoining FINRA arbitration where defendant was not plaintiff's customer); *ProShares Trust v. Schnall,* 695 F.Supp.2d 76 (S.D.N.Y. 2010) (enjoining FINRA arbitration where plaintiffs had not agreed to arbitrate the dispute); *Interactive Brokers LLC v. Durand,* 2009 WL 393827 (N.D. Ill. 2009) (granting preliminary injunction enjoining FINRA arbitration where defendants were not customers of the plaintiff); *Royal Alliance Associates, Inc. v. Branch Ave. Plaza, L.P.*, 587 F.Supp.2d 729, 740 (E.D. Va. 2008) (granting preliminary and permanent injunction barring FINRA arbitration where defendant was not plaintiff's customer); *Herbert J. Simms & Co., Inc. v. Roven,* 548 F.Supp.2d 759, 767 (N.D. Cal. 2008) (granting a preliminary injunction barring defendant from proceeding with arbitration before the National Association of Securities Dealers

(NASD), FINRA's predecessor, based on lack of customer relationship); *Goldman Sachs & Co. v. Becker*, 2007 WL 1982790, at *5-6 (N.D. Cal. 2007) (same).

Here, there is a high probability that Twenty-First will succeed on the merits because Crawford is not a customer of Twenty-First and Twenty-First never agreed to arbitrate any claims with Crawford. Accordingly, the necessary preconditions for arbitrability are not met. Moreover, precedent in this Circuit is very clear that forcing a party to arbitrate a dispute it has not consented to arbitrate constitutes *per se* irreparable harm. Finally, even if the Court does not find that Twenty-First is likely to succeed on the merits, at a minimum, Twenty-First has raised sufficiently serious questions going to the merits and the balance of the hardships tips decidedly in its favor. Accordingly, the Court should grant Twenty-First's motion.

This Court's power to enjoin the arbitration is derived from the Federal Arbitration Act ("FAA"). Section 2 of the FAA establishes that compulsory arbitration agreements are "valid, irrevocable, and enforceable" when "in writing." 9 U.S.C. §2. Section 4 of the FAA provides courts with the power to compel an arbitration pursuant to a valid agreement to arbitrate, and to enjoin such an arbitration in the absence of an applicable agreement. *Id.*[4]

Of course, there is no written agreement between the parties requiring or even authorizing arbitration. As a result, before the arbitration can take place, this Court must decide the issue of arbitrability.

---

[4] While the FAA only explicitly empowers courts to compel arbitration, district courts in this Circuit and elsewhere have generally held that district courts have the concomitant power to enjoin arbitration proceedings in appropriate circumstances. *See, Westmoreland Cap. Corp. v. Findlay*, 100 F.3d 263, 266 n.3 (2d Cir. 1996); *J.P.Morgan Securities, Inc. v. Louisiana Citizens Prop. Ins. Corp.*, 712 F.Supp.2d 70 (S.D.N.Y. 2010).

## POINT I

### TWENTY-FIRST IS LIKELY TO SUCCEED ON THE MERITS BECAUSE THE DISPUTE BETWEEN TWENTY-FIRST AND CRAWFORD IS NOT SUBJECT TO FINRA ARBITRATION

It is well established that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 587 (1960); *see also, Ross v. Am. Express Co.,* 547 F.3d 137, 142-43 (2d Cir. 2008) ("arbitration is a matter of consent, not coercion") (internal quotations omitted).  In addition, a party cannot be compelled to submit the question of arbitrability to an arbitral panel where it has not agreed to have that question decided by such panel. *See, First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995). "[A]rbitrability is an issue for judicial determination unless the parties clearly and unmistakenly provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quotations and citations omitted); *see, also, Bensadoun v. Jobe-Riat,* 316 F.3d 171 (2d Cir. 2003) (district courts, rather than the relevant arbitrator, must determine whether parties are required to arbitrate under FINRA rules).

There is no express agreement between Crawford and Twenty-First to arbitrate any disputes.  In such circumstances, FINRA rules may establish the requisite arbitration agreement. Rule 12200 of FINRA's Code of Arbitration Procedure for Customer Disputes, which governs the arbitrability of disputes by FINRA arbitration panel, requires the parties to arbitrate disputes only where:  (1) the arbitration is required by agreement or is requested by a customer; (2) the dispute is between a customer and a FINRA member or "associated person" or a member; and, (3) the dispute arises in connection with the business activities of the member or associated person.

Crawford does not allege in the Statement of Claim that Twenty-First explicitly agreed to arbitrate disputes with him at FINRA. Instead, Crawford claims that Twenty-First "acted as Claimant's stockbroker and agent in soliciting and recommending securities to Claimant," and as such, presumably will argue that he is a "customer" of Twenty-First, implicating FINRA Rule 12200. However, despite the conclusory allegation in the Statement of Claim, Crawford was never a "customer" of Twenty-First and as such, FINRA Rule 12200 does not require Twenty-First to arbitrate with Crawford.

## A.    Crawford is not a "Customer" of Twenty-First as that Term is Defined in the FINRA Rules

FINRA Rule 12200 only provides for arbitration between a FINRA member and its "customer." Notwithstanding Crawford's conclusory assertion in the Statement of Claim that Twenty-First "acted as Claimant's stockbroker and agent in soliciting and recommending securities to Claimant," Crawford was never a "customer" of Twenty-First.

### 1.    There is no Brokerage or Investment Relationship Between Crawford and Twenty-First

Although FINRA Rule 12100(i) defines a "customer" as "not includ[ing] a broker or dealer," it is well settled that to qualify as a customer under FINRA Rule 12200, Crawford would have to establish, at a minimum, "some brokerage or investment relationship between the parties." *Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.*, 264 F.3d 770, 772 (8th Cir. 2001); *see also, Bensadoun v. Jobe-Riat, supra* (when an investor relinquishes all investment authority to a third party who deals with an NASD broker, the third party, not the investor, will be the broker's customer); *ProShares Trust v. Schnall, supra*; *Herbert J. Simms & Co., Inc. v. Roven, supra*; *Goldman Sachs & Co. v. Becker, supra.*

In *Bensadoun,* the Second Circuit, citing *Fleet Boston,* observed that the term "customer" as used in FINRA Rule 12200 refers to "one involved in a business relationship with an [FINRA]

member that is related directly to investment or brokerage services." *Bensadoun*, 316 F.3d at 177 (quoting *Fleet Boston, supra*); *see, also, UBS Securities LLC v. Voegeli, supra* (citing *Bensadoun* and *Fleet Boston*, and finding no customer relationship); *Malak v. Bear Stearns & Co., Inc.,* 2004 WL 213014 (S.D.N.Y. 2004) (citing *Bensadoun* and finding no customer relationship). Applying this analysis, the *Bensadoun* court ultimately determined that whether or not the plaintiff/stockbroker in question had to arbitrate a dispute brought by certain investors turned on whether the plaintiff/stockbroker had mislead the investors in that action into believing that they were doing business with him. If so, the investors were his "customers" for purposes of Rule 12100. If, however, the investors knew that they were placing their funds under the control of a third party, then they were not the stockbroker's "customers" and could not compel him to arbitrate. *Id.*

Here, of course, there are two problems. First, Crawford made no investment. The investment was made by an entity by the name of Rahn & Bodmer and there is nothing in the Statement of Claim alleging who Rahn & Bodmer is or the nature of any relationship between Rahn & Bodmer and Crawford. Second, even if we ignore that threshold issue and assume a relationship, it is clearly by virtue of Rahn & Bodmer's execution of the Disclosure Statement that Twenty-First was not acting as a stockbroker or advisor, or in any other capacity with regard to the investment with 1861 Capital. As such, because of this acknowledgement that Twenty-First had no role with respect to the investment, Crawford is not a customer of Twenty-First for purposes of FINRA Rule 12100, and thus cannot compel arbitration pursuant to Rule 12200. *See, ProShares Trust v. Schnall, supra* (purchasers of investment from third party were not customers of investment company, and thus could not compel arbitration pursuant to Rule 12200); *Malak v. Bear Stearns & Co., supra* (investor that "imparted completed control over the

account to" third party and offered "no evidence... to show that he ever communicated" directly

with respondents is not a "customer" of any respondent for purposes of FINRA rules).

Put another way, "in order for someone to be a 'customer,' there must be some nexus

between the investor and the member or associated person in order for a party to take advantage

of the NASD arbitration provision." *Malak v. Bear Stearns & Co., Inc., supra.*

None of the hallmarks of a customer-broker relationship is present here. Crawford did

not have an account with Twenty-First and does not claim that he did. Twenty-First did not

make any investments on Crawford's behalf and there is no claim otherwise.

Indeed, courts in this Circuit have repeatedly viewed the terms "customer" and "investor"

synonymously. *See, e.g., Citigroup Global Markets, Inc. v. VCG Special Opportunities Master

Fund Ltd.,* 2008 WL 4891229, at *11 (S.D.N.Y. 2008), *aff'd,* 598 F.3d 30 (2d Cir. 2010) ("if an

investor invests directly with a member firm, the investor is likely a 'customer' of that firm")

(citing *Oppenheimer & Co. v. Neidhardt,* 56 F.3d 352 (2d Cir. 1995)); *Sands Bros. & Co., Ltd. v.

Ettinger,* 2004 WL 541846, at * 3 (S.D.N.Y. 2004) ("an investor is a 'customer' of a brokerage

house, and able to compel to arbitrate, only for conduct that falls within the scope of the specific

account between the investor and the brokerage house.").

Under circumstances similar to those presented here, courts in this judicial district have

twice recently enjoined FINRA arbitrations on the basis that the party asserting the claim in the

underlying arbitration was not a customer of the party seeking the injunction. First, in *UBS

Securities LLC v. Voegeli, supra,* plaintiff UBS Securities, a financial advisor and underwriter to

Healthtech, Inc. in connection with its initial public offering, sought to enjoin the defendants,

Swiss citizens who were seed investors in Healthtech through the initial public offering, from

pursuing claims against it in a FINRA arbitration proceeding. Defendants alleged that their

claims were subject to FINRA arbitration because defendants were purportedly customers of UBS Securities. In support of this contention, defendants alleged that Healthtech's chairman provided to an individual defendant a copy of a presentation that UBS Securities had given to Healthtech's board of directors, which presentation included estimates of the projected value of Healthtech's common stock after the completion of the offering. In addition, UBS Securities, and other underwriters, required all insiders, including defendants, to execute "lock up" agreements, promising that they would not sell any securities that they held in Healthtech for 100 days following the offering. Defendants alleged that Healthtech's common stock did not perform as well as the projections indicated in the presentation presented by UBS Securities to the Healthtech board. However, defendants did not allege that they purchased any shares in Healthtech from or through UBS Securities at any time, nor did they allege any other indicia of a customer relationship.

After outlining the principles discussed above from *Bensadoun* and *Fleet Boston* concerning the nature of the customer relationship, the *Voegeli* court concluded that neither the defendants' receipt of the presentation prepared by UBS Securities for the Healthtech board nor their execution of the lock up agreements created a "business relationship" between defendants and UBS Securities that was in any way "related directly" to UBS Securities providing "investment or brokerage services" to the defendants. *Voegeli*, 684 F.Supp.2d at 356 (quoting *Bensadoun*, 316 F.3d at 177). As such, the court concluded that no customer relationship existed, and granted UBS Securities' motion to enjoin the FINRA arbitration. Early this year, the Second Circuit affirmed the district court's injunction. *UBS Securities, LLC v. Voegeli*, 405 Fed. Appx. 550 (2d Cir. 2011).

In *ProShares Trust v. Schnall*, 695 F.Supp.2d 76 (S.D.N.Y. 2010), Judge Stein granted an investment company's motion for preliminary injunction enjoining a FINRA arbitration because the individual defendants were not customers of the investment company. In this case, the defendants commenced a FINRA arbitration against LPL Financial Corp. (the broker-dealer through whom the defendants purchased the fund shares); ProShares Trust (an investment company); ProShare Advisors (the fund's investment advisor); ProFund Distributors (a broker-dealer that distributes mutual funds), and an individual officer of ProShare Trust, ProShare Advisors, and ProFunds Distributors (ProShares Trust, ProShare Advisors, ProFunds Distributors, and the individual are collectively referred to as "plaintiffs"). It was undisputed that the defendants did not have any arbitration agreement with any of the plaintiffs. Further, defendants purchased shares in the Fund from LPL Financial, which all parties agreed was a proper party to the FINRA arbitration. The defendants did not allege that they had any business relationship with any plaintiff regarding the investment nor did they allege any affirmative effort by any plaintiff or by LBL Financial to mislead them regarding the placement of their funds.[5] In other words, plaintiffs – like Twenty-First in this case – were not involved with the sale of the investments, nor did defendants have any account or contractual relationship with them. As a result, the court concluded that defendants were not customers of any of the plaintiffs for purposes of FINRA Rule 12100, and thus could not compel arbitration pursuant to Rule 12200.

Because there was no brokerage or investment relationship between Twenty-First and Crawford, Twenty-First cannot be required to arbitrate under Rule 12200. As a result, the motion should be granted.

---

[5] Similarly, as a result of the Disclosure Agreement (see Gordon Decl., Ex. D), Crawford cannot contend that he was misled concerning the placement of his Investment through Twenty-First.

2.    **Crawford's Vague Reference to Twenty-First's Alleged "Recommendation" of The 1861 Fund Does Not Render Crawford a Customer of Twenty-First**

The entirety of Crawford's allegations concerning the relationship between him and Twenty-First provides:  "[Twenty-First] acted as [Crawford's] stockbroker and agent in soliciting and recommending securities to [Crawford]." *Statement of Claim*, ¶18.  This conclusory allegation does not make Crawford a customer of Twenty-First.

Twenty-First did refer Crawford to 1861 Capital, but making that referral is simply not the same as serving as a financial advisor or broker, or giving financial advice.  Moreover, courts have made clear that providing advice only – as opposed to providing investment or brokerage services – does not give rise to a customer relationship.  *See Fleet Boston,* 264 F.3d at 771-73 (declined to compel arbitration where the party received financial advice regarding merger, but no investment or brokerage services concerning investment at issue); *Contemporary Fin. Solutions, Inc. v. Miller*, 2007 WL 4197588, at *4 (D. Col. 2007) ("to be a 'customer' of an 'associated person' under NASD Rule 10301, an individual must have received investment or brokerage services, not just financial advice….").

3.    **Crawford Was Not a Customer of an "Associated Person" of Twenty-First**

In opposing the motion, Crawford may cite to a series of cases which hold that an investor may be considered a customer of a brokerage firm despite the fact that it did not have an account with, or make investments through, the brokerage firm.  *See, e.g., John Hancock Life Ins. Co. v. Wilson,* 254 F.3d 48 (2d Cir. 2001); *Vestek Securities Corp. v. McWood,* 280 F.3d 1078 (6th Cir. 2002); *WMA Securities, Inc. v. Ruppert*, 80 F.Supp.2d 786 (S.D. Ohio 1999).

However, each of these cases essentially deals with the same fact pattern:  fraudulent activities of a representative of a FINRA member firm, such as a broker or agent, which broker or agent had a customer relationship with the claimant/investor.  These are the classic "selling

away" cases, in which a broker tells the customer that the investment is made through the

member firm, but the broker never opens an account for the customer and instead diverts the

funds elsewhere.  Under such circumstances, courts have held that a party may compel

arbitration with the FINRA member firm despite not having been a customer of, or having an

account with, the FINRA member firm in question.  However, in each of these cases, the court

relied on the fact that the party seeking to compel arbitration was, in fact, a customer of the

FINRA member's associated person.  *See, John Hancock,* 254 F.3d at 51 (claimant a customer of

sales representative of NASD member); *Vestek Securities,* 280 F.3d at 1080 (claimant a customer

of registered agent of NASD member); *see also, Bensadoun,* 316 F.3d at 176 (noting that there

was "no question" in *John Hancock* that the aggrieved investors were customers of an

"associated person" of a FINRA member).

By contrast, in this action, Crawford does not allege that he was a customer of an

"associated person" of Twenty-First, such that he may compel arbitration pursuant to FINRA

Rule 12200.

**POINT II**

**TWENTY-FIRST WILL SUFFER IRREPARABLE HARM IF CRAWFORD
IS NOT ENJOINED FROM PROCEEDING WITH THE ARBITRATION**

Twenty-First will suffer irreparable harm unless the Court enjoins Crawford from

proceeding with the FINRA Arbitration.  Courts have recognized that "[f]orcing a party to

arbitrate a matter that the party never agreed to arbitrate, regardless of the final result through

arbitration or a judicial review, unalterably deprives the party of its right to select the forum in

which it wishes to resolve disputes." *Interactive Brokers,* 2009 WL 393827 at *5 (enjoining

defendants from being compelled to arbitrate disputes before FINRA panel).  Twenty-First

should not be forced to bear the costs and risk of submitting the dispute the FINRA arbitration

panel where it has not agreed to arbitrate in front of the panel and where the FINRA rules do not compel arbitration under the circumstances.

As a matter of black letter law, "a party that has not agreed to arbitrate a dispute will suffer irreparable harm if forced to submit to arbitration." *Int'l Trust Co. of Bermuda, Ltd. v. Fahnstock & Co., Inc.*, 1995 WL 606275, at * 3 (S.D.N.Y. 1995); *see also, Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003) (a party necessarily suffers irreparable harm if "forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable."); *UBS Securities LLC v. Voegeli, supra* ("It is beyond dispute that irreparable harm would result if [plaintiff] were compelled to arbitrate defendants' claims without having agreed to arbitration.").

Indeed, courts within this district have held that "compelling arbitration of a matter not properly subject to arbitration constitutes '*per se* irreparable harm." *Tellium, Inc. v. Corning, Inc.,* 2004 WL 307238, at *3 (S.D.N.Y. 2004); *Citigroup,* 2008 WL 4891229, at *2 (same).

There can be no serious dispute that Twenty-First has satisfied the irreparable harm prong of the preliminary injunction analysis in this case.

## POINT III

### THE BALANCE OF THE HARDSHIPS TIPS DECIDEDLY IN TWENTY-FIRST'S FAVOR

The balance of hardships also tips decidedly in Twenty-First's favor.[6]  "The balance of hardships inquiry asks which of the two parties would suffer most grievously if the preliminary injunction motion were wrongly decided." *Tradescape.com v. Shivaran,* 77 F.Supp.2d 408, 411 (S.D.N.Y. 1999).  Here a preliminary injunction will merely maintain the status quo until the

---

[6] Of course, the Court only needs to reach this inquiry to the extent that it does not find that Twenty-First is likely to succeed on the merits and instead concludes that there are serious questions that go to the merits.  For the reasons stated in Point I, *supra,* Twenty-First is highly likely to succeed on the merits.

Court has the opportunity to decide the underlying issues. Refusing to enjoin the arbitration, however, would compel Twenty-First "to expend time and resources to defend [itself] in an arbitration to which [it] may ultimately be determined not to have been a proper party, and any award would be unenforceable." *Citigroup*, 2008 WL 4891229, at *6. Indeed, it is not clear that Crawford would suffer any hardship whatsoever if the injunction is granted.

Federal Rule of Civil Procedures 65(c) provides that "the court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Here, Crawford would not suffer any damages if it were wrongfully enjoined from proceeding with the FINRA Arbitration. Instead, if such were the case, he could proceed with the FINRA Arbitration after such a determination. Accordingly, Twenty-First should not be required to post any security. *See, e.g., Citigroup Global Markets*, 2008 WL 4891229, at *6 (granting preliminary injunction enjoining FINRA Arbitration without requiring that the movant post any security); *Voegeli*, 684 F.Supp.2d 351 (same); *ProShares Trust*, 695 F.Supp.2d 76 (same).

## CONCLUSION

For the foregoing reasons, Plaintiff Twenty-First respectfully requests that this Court issue an Order preliminarily enjoining Crawford from pursing his claims in the FINRA Arbitration proceeding.

Dated: New York, New York  
       September 13, 2011

KAUFMANN GILDIN ROBBINS  
& OPPENHEIM LLP


By: _____  
    Daniel Gildin (DG9555)  
    Kevin M. Shelley (KS8149)  
    777 Third Avenue  
    New York, New York 10017  
    212.755.3100  
    dgildin@kaufmanngildin.com  
    kshelley@kaufmanngildin.com

    *Attorneys for Plaintiff*  
    *Twenty-First Securities Corporation*