**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TWENTY-FIRST SECURITIES CORPORATION, | CASE NO. 11 CIV 6406 |
| | |
| Plaintiff, | Judge William H. Pauley |
| | |
| vs. | **MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** |
| | |
| DR. BYRON CRAWFORD, | **DATE:** November 4, 2011 |
| | **TIME:** 3:30 p.m. |
| Defendant. | **PLACE:** Room 11D, United States Courthouse, 500 Pearl Street, New York, New York. |

Robert A. Uhl, Esq., (RU0842)
AIDIKOFF, UHL & BAKHTIARI
9454 Wilshire Boulevard, Suite 303
Beverly Hills, California 90212
Telephone: (310) 274-0666
robertauhl@aol.com

*Attorneys for Defendant*
*Dr. Byron Crawford*

## TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ..................................................................................... 2

II.   SUMMARY OF ARGUMENT ..................................................................................... 2

III.  THE DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK
      MAY NOT ENJOIN AN ARBITRATION SCHEDULED TO OCCUR IN
      LOS ANGELES,CALIFORNIA.................................................................................... 3

IV.   PRELIMINARY INJUNCTION LEGAL STANDARD ............................................. 6

V.    TWENTY-FIRST IN NOT LIKELY TO SUCCEED ON THE MERITS BECAUSE THE
      DISPUTE BETWEEN TWENTY-FIRST AND DR. CRAWFORD IS SUBJECT TO FINRA
      ARBITRATION .............................................................................................................. 8

      A.   Dr. Crawford is a "Customer" of Twenty-First as Defined by FINRA Rules ..................... 9

           i.    A brokerage relationship existed between Dr. Crawford and Twenty-First................ 10

           ii.   Twenty-First not only recommended the 1861 Fund but acted as the
                 "referring broker"............................................................................................................ 14

           iii.  Crawford was a customer of an "associated person" of Twenty-First ........................ 15

      B.   Dr. Crawford's Dispute Arises in Connection with the Business Activities of
           Twenty-First..................................................................................................................... 17

VI.   TWENTY-FIRST WILL NOT SUFFER IRREPARABLE HARM IF
      DR. CRAWFORD IS NOT ENJOINED FROM PROCEEDING WITH THE
      ARBITRATION .............................................................................................................. 17

VII.  THE BALANCE OF THE HARDSHIPS DOES NOT TIP DECIDEDLY IN
      TWENTY-FIRST'S FAVOR............................................................................................ 18

# TABLE OF AUTHORITIES

**CASES**                                                                                          **Page(s)**

*Abdul Wali v. Coughlin,*
   754 F.2d 1015 (2d Cir. 1985).................................................................................7

*Adams v. Whitney, et al.,*
   No. 8:07-CV-00452, 2008 WL 189905 (N.D.N.Y. Jan. 18, 2008) .........................................7

*Bao v. Gruntal & Co., Inc.,*
   942 F. Supp. 978 (D.N.J. 1996) ...............................................................................4, 5

*Bensadoun v. Jobe-Riat,*
   316 F.3d 171 (2d Cir. 2003)..................................................................................10, 12

*Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.,*
   598 F.3d 30 (2d Cir. 2010)....................................................................................6, 7, 8

*Contemporary Fin. Solutions, Inc. v. Miller,*
   No. 07-cv-00793-MSK, 2007 WL 4197588 (D. Colo. Nov. 2, 2007).....................................14

*Conticommodity Servs., Inc. v. Philipp & Lion,*
   613 F.2d 1222 (2d Cir. 1980)..................................................................................18

*Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.,*
   264 F.3d 770 (8th Cir. 2001) ..............................................................................12, 14

*Freedom Holdings, Inc. v. Spitzer,*
   408 F.3d 112 (2d Cir. 2005)...................................................................................7

*Gibson v. U. S. Immigration & Naturalization Service,*
   541 F. Supp. 131 (S.D.N.Y. 1982) ..........................................................................8

*Grand River Enter. Six Nations, Ltd. v. Pryor,*
   481 F.3d 60 (2d Cir. 2007)....................................................................................3, 7

*Horizon Plastics, Inc. v. Constance,*
   No. 99-6132, 2000 WL 1176543 (D.N.J. Aug. 11, 2000) ...............................................5

*Indian Harbor Ins. Co. v. Global Transp. Sys.,*
   197 F. Supp. 2d 1 (S.D.N.Y. 2002) ........................................................................5

*J.P. Morgan Secs., Inc. v. La. Citizens Prop. Ins. Corp.,*
   712 F. Supp. 2d 70 (S.D.N.Y. 2010).......................................................3, 6, 7, 8, 9, 12

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,*
  596 F.2d 70 (2d Cir. 1979).........................................................................7

*John E. Andrus Mem'l, Inc. v. Daines,*
  600 F. Supp. 2d 563 (S.D.N.Y. 2009)........................................................7

*John Hancock Life Ins. Co. v. Wilson,*
  254 F.3d 48 (2d Cir. 2001)..................................................................10, 15

*Kelly v. Whitehaven Settlement Funding, LLC,*
  No. 09-0541, 2010 WL 746983 (S.D. Ill. Feb. 26, 2010)..........................4

*Kickham Hanley P.C. v. Kodak Retirement Income Plan,*
  558 F.3d 204 (2d Cir. 2009).......................................................................7

*Kipany Prod., Ltd. v. RMH Teleservices, Inc.,*
  No. 97-7599, 1997 WL 706445 (S.D.N.Y. Nov. 13, 1997)......................4, 5

*L.F. Rothschild & Co, Inc. v. Katz,*
  702 F. Supp. 464 (S.D.N.Y. 1988) ...........................................................4

*Mazurek v. Armstrong,*
  520 U.S. 968 .............................................................................................7

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer,*
  49 F.3d 323 (7th Cir. 1995) ...................................................................4, 5

*Moore v. Consolidated Edison,*
  409 F.3d 506, 511 (2d Cir. 2005)..............................................................3

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
  460 U.S. 1 ............................................................................................10, 18

*MyWebGrocer, LLC v. Hometown Info, Inc.,*
  375 F.3d 190 (2d Cir. 2004)......................................................................19

*Nat'l City Golf Fin. v. Higher Ground Country Club Mgmt. Co., LLC,*
  641 F. Supp. 2d 196 (S.D.N.Y. 2009)........................................................4

*Oppenheimer & Co., Inc. v. Neidhardt,*
  56 F.3d 352 (2d Cir. 1995).......................................................................15

*Proshares Trust v. Schnall,*
  695 F. Supp. 2d 76 (S.D.N.Y. 2010)....................................................13, 14

iii

*Protostorm, LLC v. Antonelli, Terry, Stout & Kraus, LLP,*
  No. 08-931, 2010 WL 785316 (E.D.N.Y. Mar. 8, 2010)............................................................4

*Prudential Secs, Inc. v. Desmond,*
  1997 WL 570926 (E.D. Pa. Sept. 5, 1997) ...............................................................................5

*Raytheon Co. v. Nat'l Union Fire Ins. Co.,*
  306 F. Supp. 2d 346 (S.D.N.Y. 2004)........................................................................................5

*Satcom Int'l. Group PLC v. Orbcomm Intern. Partners, LP,*
  49 F. Supp. 2d 331 (S.D.N.Y. 1999)..........................................................................................4

*Smoothline Ltd. v. N. Am. Foreign Trading Corp.,*
  249 F.3d 147 (2d Cir. 2001)......................................................................................................18

*Societe Generale v. Raytheon European Mgmt and Sys. Co.,*
  643 F.2d 863 (1st Cir. 1981)......................................................................................................4

*Susman v. Crawford,*
  488 F.3d 136 (2d Cir. 2007)........................................................................................................7

*The Deal, LLC v. Korangy Publ'g, Inc.,*
  309 F. Supp. 2d 512 (S.D.N.Y. 2004)........................................................................................7

*U.S. v. Eberhard,*
  No. 03-562, 2004 WL 616122 (S.D.N.Y. Mar. 30, 2004)........................................................5

*UAL Corp. v. Mesa Airlines, Inc.,*
  88 F. Supp. 2d 910 (N.D. Ill. 2000) ..........................................................................................6

*UBS Secs. LLC v. Voegeli,*
  684 F. Supp. 2d 351 (S.D.N.Y. 2010)......................................................................................13

*UBS Fin. Servs. v. W. Va. Univ. Hosps., Inc.,*
  760 F. Supp. 2d 373 (S.D.N.Y. 2010)......................................................................3, 7, 8, 9, 19

*Vestax Secs. Corp. v. McWood,*
  280 F.3d 1078 (6th Cir. 2002) ................................................................................................15

*Viets v. Arthur Anderson LLP,*
  No. 1:03-cv-0682-DFH, 2003 WL 21525062 (S.D. Ind. 2003) ............................................5, 6

*WMA Sec., Inc. v. Ruppert,*
  80 F. Supp. 2d 786 (S.D. Ohio 1999) ......................................................................................15

**STATUTES**

9 U.S.C. § 4................................................................................................................3,4

**OTHER AUTHORITIES**

FINRA Rule 12200...........................................................................................................8

FINRA Rule 12213 ..........................................................................................................3

FINRA Rule 12100(i) ......................................................................................................9

## I.  PRELIMINARY STATEMENT

Defendant Dr. Bryon Crawford ("Dr. Crawford") respectfully submits this memorandum of law in opposition to Plaintiff Twenty-First Securities Corporation's ("Twenty-First") motion pursuant to Rule 65(a) of the Federal Rules of Civil Procedure for an Order preliminarily enjoining Dr. Crawford from pursuing claims against Twenty-First made in the Financial Industry Regulatory Authority ("FINRA") arbitration proceeding he commenced on July 18, 2011, FINRA Case No. 11-02801.

## II.  SUMMARY OF ARGUMENT

Twenty-First's Motion should be denied for many reasons. First, pursuant to 9 U.S.C. § 4 and the case law, this Court lacks the power to enjoin an arbitration that will be held in Los Angeles, California. Second, Twenty-First fails to meet the legal standard for this Court to grant a preliminary injunction. Specifically, as set forth in Section V, *infra*, as a matter of fact and law Dr. Crawford was a "customer" of Twenty-First who relied upon its President, Robert Gordon, for investment advice. As a matter of fact, email correspondence evidences that Twenty-First admitted it was Dr. Crawford's "referring broker" for his purchase of the only security in issue, the 1861 Capital Discovery Domestic Fund, LP ("1861 Fund"), for which Twenty-First received a solicitation fee. Accordingly, Twenty-First cannot succeed on the merits of its case. Moreover, Twenty-First will not suffer irreparable harm if this Court denies its request for a preliminary injunction as set forth in Sections V and VI, *infra*, as a matter of fact and law. Third, as set forth in Section VII, *infra*, as a matter of fact, the balance of the hardships does not tip decidedly in Twenty-First's favor because further delay of Dr. Crawford's FINRA arbitration would frustrate Dr. Crawford's right to a speedy arbitration of his claims. Therefore, Dr. Crawford requests that this Court deny Twenty-First's request to preliminarily enjoin the FINRA Arbitration

commenced by Dr. Crawford arising from the losses he sustained in connection with Twenty-First's representations and recommendation to purchase the 1861 Fund in February of 2007.

## III.   THE DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK MAY NOT ENJOIN AN ARBITRATION SCHEDULED TO OCCUR IN LOS ANGELES, CALIFORNIA

Twenty-First has filed suit in the wrong court. The Federal Arbitration Act provides that a court's power to compel arbitration is limited to the power to compel arbitrations in its own district. *See* 9 U.S.C § 4. In recognition of this limitation, several courts have held that the power to enjoin an arbitration is territorially limited. "The district court has wide discretion in determining whether to grant a preliminary injunction." *UBS Fin. Servs. v. W. Va. Univ. Hosps., Inc.*, 760 F. Supp. 2d 373, 376 (S.D.N.Y. 2010) (quoting *J.P. Morgan Secs., Inc. v. La. Citizens Prop. Ins. Corp.*, 712 F. Supp. 2d 70, 75 (S.D.N.Y. 2010); *accord Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (quoting *Moore v. Consolidated Edison*, 409 F.3d 506, 511 (2d Cir. 2005)). Dr. Crawford acknowledges that *a* court's authority to enjoin an arbitration is well-established. But it is far from clear that *this* court has authority to enjoin *this* arbitration since it is scheduled to occur outside this judicial district.

FINRA has advised that the anticipated hearing location of this case is Los Angeles, California.[1] *See* Declaration of Robert A. Uhl ("RAU Decl."), ¶ 4, Exhibits A and B. As a result, the proper court to evaluate Twenty-First's request to enjoin the arbitration is the District Court for the Central District of California.

The Federal Arbitration Act ("FAA") authorizes a district court to compel arbitration. *See* 9 U.S.C. § 4. Importantly, however, the power of a court to compel arbitration is expressly

---

[1] FINRA Rule 12213 provides that "Generally, the Director will select the hearing location closest to the customer's residence at the time of the events giving rise to the dispute." *See* RAU Decl., ¶4, Exhibit B.

limited by § 4 of the FAA.  Specifically, § 4 of the FAA provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. **The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.**

(Emphasis added).  This last sentence makes clear that a court may only compel an arbitration in its own district.[2]  Several courts have held that, "in appropriate circumstances, § 4 of the FAA may be applied to stay or enjoin arbitration proceedings."[3]

Because the power to enjoin an arbitration derives from § 4 of the FAA, many courts, including the Seventh Circuit, have held that the power is limited by § 4's venue limitations. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 328 (7th Cir. 1995) (finding that a district court lacks the authority to enjoin arbitration if the arbitration is to be held in another district).[4]  The Second Circuit has not yet taken a side on this split.[5]  But the only

---

[2] *See Protostorm, LLC v. Antonelli, Terry, Stout & Kraus, LLP*, No. 08-931, 2010 WL 785316 (E.D.N.Y. Mar. 8, 2010) ("A district court has no authority under Section 4 to compel arbitration outside its district."); *Nat'l City Golf Fin. v. Higher Ground Country Club Management Co., LLC*, 641 F. Supp. 2d 196, 202 (S.D.N.Y. 2009) (same); *Bao v. Gruntal & Co., Inc.*, 942 F. Supp. 978, 983 (D.N.J. 1996) (same); *Kipany Prod., Ltd. v. RMH Teleservices, Inc.*, No. 97-7599, 1997 WL 706445, at *1 (S.D.N.Y. Nov. 13, 1997).

[3] *Satcom Int'l Group PLC v. Orbcomm Intern. Partners, LP*, 49 F. Supp. 2d 331, 342 (S.D.N.Y. 1999); *L.F. Rothschild & Co, Inc. v. Katz*, 702 F. Supp. 464, 468 (S.D.N.Y. 1988); *Societe Generale v. Raytheon European Mgmt. and Sys. Co.*, 643 F.2d 863, 868 (1st Cir. 1981) ("[T]o enjoin a party from arbitrating where an agreement to arbitrate is absent is the concomitant of the power to compel arbitration where it is present.").

[4] *See also Kelly v. Whitehaven Settlement Funding, LLC*, No. 09-0541, 2010 WL 746983 (S.D. Ill. Feb. 26, 2010) ("The venue directive of Section 4 ... applies to procedures to both compel and those to enjoin arbitration."); *Bao v. Gruntal & Co.*, 942 F. Supp. 978, 983-4 (D.N.J. 1996)

opinion in this district to squarely address the issue held that a court can only enjoin an arbitration in its own district. Where "an application to stay an arbitration is brought in a district other than that in which the arbitration (if there is to be one) is to be held, the district in which the application for a stay is made does not have concomitant power to compel arbitration, because it does not have power under 9 U.S.C. § 4 to compel arbitration in another district." *Kipany*, 1997 WL 706445, at *1 (citations omitted); *See also U.S. v. Eberhard*, No. 03-562, 2004 WL 616122, (S.D.N.Y. Mar. 30, 2004) (noting that "at least one of the pending NASD arbitrations appears to be scheduled to take place in Los Angeles, California [] placing in question this Court's jurisdiction to stay that proceeding.").

The Seventh Circuit's reasoning should apply here. The Seventh Circuit noted that the § 4 of the FAA uses the mandatory language "shall" as compared to the permissive venue language ("may") of §§ 9 and 10 of the FAA that deal with confirming awards. This distinction reflects the policy that "prearbitration litigation is intended to lead directly to, and to focus on, the future arbitration proceeding. It is a path that should narrow, not widen, as the arbitration draws nearer." *Lauer*, 49 F.3d at 329-30. Reviewing the legislative history, the Seventh Circuit concluded that § 4 "is aimed at streamlining the path toward arbitration and preventing scattershot attacks in various judicial fora." *Id.* at 329. Permitting broader venue for motions to enjoin than motions to compel would encourage parties to seek to "beat [an adversary] to a

---

(court may only enjoin arbitration in its own district); *Prudential Secs, Inc. v. Desmond*, 1997 WL 570926, at *2 (E.D. Pa. Sept. 5, 1997) (same); *Horizon Plastics, Inc. v. Constance*, No. 99-6132, 2000 WL 1176543 (D.N.J. Aug. 11, 2000) (same).

[5] *See Indian Harbor Ins. Co. v. Global Transp. Sys.*, 197 F. Supp. 2d 1, 2 (S.D.N.Y. 2002) ("[T]he Second Circuit has not yet decided how a district court should proceed when a suit pending before it involves an arbitration agreement which specifies that arbitration should take place outside the court's district."); *Raytheon Co. v. Nat'l Union Fire Ins. Co.*, 306 F. Supp. 2d 346, 354 n.50 (S.D.N.Y. 2004) (Scheindlin, J.) ("There is conflicting authority regarding the power of a court located outside the district in which the arbitration is to be held to stay arbitration.")

different courthouse door," encouraging "forum-shopping gamesmanship." *Viets v. Arthur Anderson LLP*, No. 1:03-cv-0682-DFH, 2003 WL 21525062 (S.D. Ind. June 26, 2003). Moreover, consolidation of all arbitration-related proceedings in one court serves judicial economy, because if this Court were to deny the injunction and rule in Dr. Crawford's favor, "plaintiffs could ignore this court's order and force [Dr. Crawford] to sue plaintiffs in [California] to compel their compliance with the demand for arbitration." *UAL Corp. v. Mesa Airlines, Inc.*, 88 F. Supp. 2d 910, 913 (N.D. Ill. 2000). This result was recognized in the recent case of *J.P. Morgan Secs.*, 712 F. Supp. 2d at 83 wherein the court held that it could not compel arbitration after denying the plaintiff's request for a preliminary injunction as follows:

> I cannot compel the arbitration to proceed so long as it remains pending in New Orleans. If [Defendant] wishes to obtain an order compelling that arbitration, it will have to seek that order in the United States District Court for the Eastern District of Louisiana. If [Defendant] does make a motion to compel in the appropriate district, that court may not be bound by my determination on this preliminary injunction motion.

*Id.* Finally, requiring Twenty-First to bring any motion for a preliminary injunction in the District Court for the Central District of California is consistent with FINRA Rule 12213 which selects the hearing location closest to the customer's residence at the time of the events giving rise to the dispute. *See* RAU Decl., ¶ 4, Exhibit B. Therefore, this court should follow the reasoning of the Seventh Circuit and *Kipany*, and hold that an order to enjoin arbitration must be filed in the district where the arbitration is to be held.

## IV.   PRELIMINARY INJUNCTION LEGAL STANDARD

As set forth by Twenty-First in its Motion, "this circuit has required a party seeking a preliminary injunction to show (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the

preliminary relief." *See Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)); *see also Kickham Hanley P.C. v. Kodak Retirement Income Plan*, 558 F.3d 204, 209 (2d Cir. 2009). Nonetheless, it is cautioned that "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion. *See UBS Fin. Servs.*, 760 F. Supp. 2d at 376 (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original)); *accord J.P. Morgan Secs.* 712 F. Supp. 2d at 75 (quoting *Sussman v. Crawford*, 488 F.3d 136, 139-40 (2d Cir. 2007) (emphasis in original).[6] To establish a likelihood of success, "the movant must show that its chance of prevailing is greater than fifty percent."[7]

"To fulfill [sic] the irreparable harm requirement, [a plaintiff] must demonstrate that absent a preliminary injunction [it] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *UBS Fin. Servs.*, 760 F. Supp. 2d at 377 (quoting *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (internal quotation marks omitted);*accord J.P. Morgan Secs.*, 712 F. Supp. 2d at 75 (quoting *Grand River Enter. Six Nations, Ltd.* 481 F.3d at 66).

Additionally, "[i]n determining whether a plaintiff has demonstrated a likelihood of success on the merits of the ultimate case, a court is not called upon finally to decide the merits of the controversy. It is necessary only that the court find that the plaintiff has presented a strong

---

[6] *See also Adams v. Whitney, et al.*, No. 8:07-CV-00452, 2008 WL 189905, *1 (N.D.N.Y. Jan. 18, 2008) ("A party seeking preliminary injunction bears a heavy evidentiary burden before a court will issue this form of relief."); *The Deal, LLC v. Korangy Publ'g, Inc.*, 309 F. Supp. 2d 512, 520 (S.D.N.Y. 2004) ("preliminary injunction is 'one of the most drastic tools in the arsenal of judicial remedies' and should not be routinely granted.")(citation omitted).

[7] *John E. Andrus Memorial, Inc. v. Daines*, 600 F. Supp. 2d 563, 574 (S.D.N.Y. 2009) (citing *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985)).

prima facie case to justify the discretionary issuance of preliminary relief." *J.P. Morgan Secs.,* 712 F. Supp. 2d at 75-76 (quoting *Gibson v. U.S. Immigration & Naturalization Serv.,* 541 F. Supp. 131, 137 (S.D.N.Y. 1982) (internal citations omitted); *accord UBS Fin. Servs.,* 760 F. Supp. 2d at 377.

"In the alternative, the 'serious questions' standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs of not granting the injunction outweigh the benefits." *See UBS Fin. Servs.* 760 F. Supp. 2d at 377 (quoting *Citigroup Global Mkts.,* 598 F.3d at 35).

As set forth in Sections V, VI and VII, *infra,* Twenty-First fails to meet the legal standards for this Court to grant a preliminary injunction.

## V.    TWENTY-FIRST IS NOT LIKELY TO SUCCEED ON THE MERITS BECAUSE THE DISPUTE BETWEEN TWENTY-FIRST AND DR. CRAWFORD IS SUBJECT TO FINRA ARBITRATION

Pursuant to FINRA Rule 12200, *Arbitration Under an Arbitration Agreement or the Rules of FINRA,* a FINRA member must arbitrate a dispute under the Code if: "(1) (a) arbitration under the Code is required by written agreement, <u>or</u> (b) <u>requested by the customer</u>; (2) the dispute is between a customer and a member or associated person of a member; and (3) the dispute arises in connection with the business activities of the member or the associated person." *See* RAU Decl., ¶ 5, Exhibit C (emphasis added).

When analyzing the first prong, it is undisputed that FINRA arbitration is not required by a written agreement. However, Dr. Crawford requested arbitration under the FINRA Code because he was, as a matter of fact, a customer of Twenty-First. In *J.P. Morgan Secs.* 712 F. Supp. 2d at 76-77, the court explained what customers must set forth when they request an

8

arbitration against a FINRA member firm as follows:

> By becoming members of FINRA, [plaintiff broker-dealers] have agreed to submit to FINRA rules, including FINRA Rule 12200, which requires members to arbitrate disputes in connection with their business activities if and when arbitration is demanded by a customer. This Rule creates 'a compulsory arbitration agreement' between FINRA and its members, of which customers are intended 'third party beneficiaries.' Accordingly, for [defendants] to trigger this compulsory arbitration agreement, it must establish (1) that it is a customer of [plaintiff broker-dealers] and (2) that the dispute arises in connection with the business activities of [plaintiff broker-dealers] (internal citations omitted).

Because Dr. Crawford is a customer of Twenty-First, as set forth below, his request "creates a compulsory arbitration agreement of which customers are intended third party beneficiaries." *UBS Fin. Servs.* 760 F. Supp. 2d at 377 (internal citations omitted). To trigger this compulsory arbitration agreement, Dr. Crawford must establish (1) that he is a customer of Twenty-First and (2) that the dispute arises in connection with the business activities of Twenty-First.

A.     **Dr. Crawford is a "Customer" of Twenty-First as Defined by FINRA Rules**

FINRA Rule 12100(i) does not specifically define the term "customer" but states: "[a] customer shall not include a broker or dealer." *See* RAU Decl., ¶ 6, Exhibit D. Courts have found that the "sole exclusion suggests that FINRA intended to require its members to arbitrate disputes with the full array of parties with whom they have business dealings, without limiting the scope of the rule to parties who reasonably relied on the FINRA member for impartial advice." *UBS Fin. Servs.* 760 F. Supp. 2d at 378 (internal citations omitted). Dr. Crawford is not a broker or dealer, and therefore the definition of "customer" contained in Rule 12100(i) does not exclude Dr. Crawford.

///

9

Nonetheless, the Second Circuit has held that ambiguities over whether the claimant is a "customer" must be resolved "in favor of arbitration."[8] In addition, the Second Circuit has stated that the term "customer" is to be construed broadly.[9]

Twenty-First argues that Dr. Crawford is not a "customer" under FINRA Rules because: 1) there was no brokerage or investment relationship between Dr. Crawford and Twenty-First; 2) Dr. Crawford's vague reference to Twenty-First's alleged "recommendation" of the 1861 Fund does not render Dr. Crawford a customer of Twenty-First; and 3) Crawford was not a customer of an "associated person" of Twenty First. These arguments are without merit.

### i. A brokerage relationship existed between Dr. Crawford and Twenty-First

Contrary to Respondent's first argument, there was a brokerage relationship between Dr. Crawford and Twenty-First. This brokerage relationship derived from Twenty-First's solicitation and recommendation to Dr. Crawford that he invest in the 1861 Fund, for which Twenty-First received a referral fee. Significantly, Twenty-First acknowledged in writing that it was Dr. Crawford's "referring broker" for purposes of his investment in the 1861 Fund.

In or about May 2006, Dr. Crawford asked Mr. Gordon to recommend income yielding investments. DBC Decl., ¶ 5; *see also* Twenty-First's Motion, pgs.2-3. In response to his inquiry, in or about November 2006, Mr. Gordon recommended an investment in the 1861 Fund. DBC Decl., ¶ 6; *see also* Twenty-First's Motion, pgs.2-3. Dr. Crawford had never heard of the 1861 Fund prior to Mr. Gordon's recommendation and solicitation to invest in the 1861 Fund. DBC Decl., ¶ 7. At all times, the 1861 Fund was represented to Dr. Crawford as a low-risk municipal

[8] *John Hancock Life Ins. Co. v. Wilson,* 254 F.3d 48, 58 (2d Cir. 2001) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25, (1983)); *see also Bensadoun v. Jobe-Riat,* 316 F.3d 171, 176 (2d Cir. 2003) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

[9] *Bensadoun,* 316 F.3d at 176; *John Hancock Life Ins. Co.,* 254 F.3d at 59 ("[T]he NASD Code defines 'customer' broadly, excluding only 'a broker or dealer.'").

bond substitute. DBC Decl., ¶ 8. Dr. Crawford would not have made an investment in the 1861

Fund if he understood the 1861 Fund was risky or there was any possibility that he would lose a

significant portion of his original principal amount invested. DBC Decl., ¶ 9.  Dr. Crawford

trusted and relied upon Mr. Gordon to make sure that the 1861 Fund was suitable for him and in

accordance with his investment goals for the money invested. DBC Decl., ¶ 10.

Therefore, Twenty-First, through its agent and President, Robert Gordon, solicited and

recommended that Dr. Crawford invest in the 1861 Fund in response to Dr. Crawford's asking

Mr. Gordon to recommend a high income yielding investment. Thereafter, in order to finalize the

purchase on the 1861 Fund, Dr. Crawford's nominee, Rahn & Bodmer, executed a Disclosure

Statement on June 7, 2007 which stated in relevant part as follows:

> **Please be advised that Twenty-First Securities Corporation ("TFSC") [Twenty-First] has entered into an agreement with 1861 Capital Management LLC ("1861 Capital") whereby TFSC [Twenty-First] will receive a solicitation fee from 1861 Capital for accounts TFSC [Twenty-First] refers to become investors in 1861 Capital Fund LP (the "Fund"). TFSC [Twenty-First] will receive such a fee on your account.** TFSC's [Twenty-First's] solicitation fee is an amount calculated to be equal to 15% of the Management Fee received by 1861 Capital and 15% of the Incentive Allocation received by 1861 Capital Partners LLC (the general partner of the Fund) from the Fund relating to your investment. 1861 Capital has assured TFSC [Twenty-First] that no additional charges or costs are incurred by any investor by virtue of their having been introduced by TFSC [Twenty-First].

*See also* DBC Decl., ¶ 11, Exhibit B.

On March 7, 2008, approximately nine (9) months after Twenty-First's President, Robert

Gordon, solicited and recommended Dr. Crawford to invest in the 1861 Fund, Dr. Crawford's

attorney, Michael W. Johnson, Esq., of Osborne, Helman, Knebal & Deleery L.L.P, received an

email from Jim Siegel, General Counsel of Twenty-First Securities Corp., wherein Mr. Siegel

specified Twenty-First's relationship with the 1861 Fund as follows:

> I am writing in response to your email below addressed to Bob Gordon yesterday. **To answer your first question, the role of Twenty-First vis-á-vis 1861 Capital is that of**

**a referring broker. For that role, we receive a solicitation fee paid on an on-going basis.** We certainly do not feel as though our receipt of fees would present a bias of any sort in advising our clients, but will inform you nonetheless in the interest of full transparency, that we would cease to receive fees for any referred clients that redeem out of the Fund.

*See* Declaration of Michael W. Johnson, Esq., ("MWJ Decl."), ¶ 6, Exhibit B, (emphasis added).

Twenty-First cites to multiple cases for the proposition that in order for Dr. Crawford to qualify as a customer he "would have to establish at a minimum, some brokerage or investment relationship between the parties." *See* Twenty-First's Motion, pg. 8-9 (citing to *Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.*, 264 F.3d 770, 772 (8th Cir. 2001); *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 177 (2d Cir. 2003). <u>What could be better evidence of a brokerage relationship then an email from Twenty-First admitting that it is a "referring broker" for the 1861 Fund and in return receives a solicitation fee from the 1861 Fund paid on an on-going basis?</u>

Additionally, contrary to Twenty-First's argument that "courts in this Circuit have repeatedly viewed the terms 'customer' and 'investor' synonymously" (Twenty-First's Motion, pg. 10), it has been noted by *J.P. Morgan Secs.*, 712 F. Supp. 2d at 78, that the broker/investor relationship is not the only relationship sufficient to satisfy Rule 12200 as follows:

> …[Plaintiff broker-dealers] argue that courts in this district have viewed the terms 'customer' and 'investor' synonymously. Plaintiffs misread the cases they cite. It is well established that an investor is a customer of a financial firm that acts as its broker. <u>While the cases cited by plaintiffs affirm this proposition, they do not support the conclusion that the broker/investor relationship is the only relationship sufficient to satisfy Rule 12200. The rule that an investor is a customer of its broker is a rule of inclusion, not exclusion.</u> *Id.* (internal citations omitted) (emphasis added) (court held that an issuer is a customer of an underwriter).

Since Twenty-First solicited and recommended Dr. Crawford to invest in the 1861 Fund as the "referring broker" for which they received an on-going solicitation fee and Dr. Crawford relied upon this advice (*See* Declaration of Dr. Byron Crawford ("DBC Decl."), ¶ 10-11), there was a brokerage relationship between Dr. Crawford and Twenty-First. As such, Dr. Crawford is a

customer of Twenty-First as defined by FINRA Rules and case law.

Twenty-First cites *UBS Sec. LLC v. Voegeli*, 684 F. Supp. 2d 351, 352 (S.D.N.Y. 2010) and *Proshares Trust v. Schnall*, 695 F. Supp. 2d 76 (S.D.N.Y. 2010) to support its argument that: "courts in this judicial district have twice recently enjoined FINRA arbitration on the basis that the party asserting the claims in the underlying arbitration was not a customer of the party seeking the injunction." Twenty-First's Motion, pgs. 10-12. These cases are not inconsistent with Dr. Crawford being a customer of Twenty-First.

The arbitration claimants in *Voegeli* were investors in a company to which UBS provided investment advice. The court held that the *Voegeli* claimants could not compel arbitration because UBS' relationship was with the company, not the claimants. *See Voegeli*, 684 F. Supp. 2d at 356 ("[D]efendants became shareholders of a company that UBS Securities was advising in connection with an IPO. This is insufficient to establish a customer relationship with UBS Securities. Defendants have not shown that they had any other relationship, direct or indirect, with UBS Securities or with an associated person of UBS Securities."). The court enjoined the FINRA arbitration because the arbitration claimants had no business relationship *at all* with UBS. *Id. Voegeli* is not at all inconsistent with Dr. Crawford being a customer of Twenty-First since Twenty-First received a solicitation fee as the "referring broker" and there was a business relationship between Dr. Crawford and Twenty-First as evidenced by Twenty-First admission that they recommended that Dr. Crawford invest in the 1861 Fund.

Likewise, the arbitration claimants in *Proshares Trust* were also investors who purchased shares of the ProShares UltraShort Real Estate Fund through LPL Financial Corp. 695 F. Supp. 2d at 78. The *ProShares* plaintiffs sought declaratory and injunctive relief against the arbitration claimants. *Id.* at 76-77. It is crucial to note that it was not in dispute that the arbitration claimants

13

were "customers" of LPL Financial Corp., a FINRA member; thus LPL agreed to arbitrate their claims. *Id.* In granting *ProShare's,* a non-FINRA member's, request for declaratory and injunctive relief, the court held:

> [T]he [arbitration claimants] do not dispute that they purchased shares in the Fund from LPL Financial, with whom they are currently arbitrating their claims before FINRA. Nor do the [arbitration claimants] even allege that they communicated directly with any [ProShare plaintiff] in this action regarding their investment. Furthermore, the [arbitration claimants] do not allege an affirmative effort by any [ProShare plaintiff] or by LPL [sic] Financial to mislead them regarding the placement of their funds... Accordingly, the [arbitration claimants] are not customers of any plaintiff for purposes of FINRA Rule 12100, and thus cannot compel arbitration pursuant to Rule 12200.

*Id.* at 79-80 (internal citations omitted). Again, *Proshares Trust* is not at all inconsistent with Dr. Crawford being a customer of Twenty-First, a FINRA member, because Twenty-First was the "referring broker" who solicited and recommended that Dr. Crawford invest in the 1861 Fund and received a solicitation fee.

### ii.   Twenty-First not only recommended the 1861 Fund but acted as the "referring broker"

Next, Twenty-First argues: "Twenty-First did refer Crawford to 1861 Capital, but making that referral is simply not the same as serving as a financial advisor or broker, or giving financial advice." Twenty-First's Motion, pg. 13. Twenty-First argues: "[C]ourts have made clear that providing advise only-as opposed to providing investment or brokerage services- does not give rise to a customer relationship." *Id.* (citing *Fleet Boston Robertson Stephens, Inc.* 264 F.3d at 771-73; *Contemporary Fin. Solutions, Inc. v. Miller*, No. 07-cv-00793-MSK, 2007 WL 4197588, at *4 (D. Col. Nov. 2, 2007).

As set forth in Section V (A) (i), *supra,* not only did Twenty-First solicit and recommend Dr. Crawford to invest in the 1861 Fund, but also acted as the "referring broker" for Dr. Crawford's investment in the 1861 Fund for which they received an on-going solicitation fee. By

serving as Dr. Crawford's paid "referring broker" for the 1861 Fund, Twenty-First provided Dr. Crawford with brokerage services. Therefore, Twenty-First's argument is without merit.

### iii.    Crawford was a customer of an "associated person" of Twenty-First

Twenty-First acknowledges that cases have held "an investor may be considered a customer of a brokerage firm despite the fact that it did not have an account with, or make investments through, the brokerage firm." *See* Respondent's Motion, pgs. 13-14 (citing *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48 (2d Cir. 2001); *Vestax Sec. Corp. v. McWood*, 280 F.3d 1078 (6th Cir. 2002); *WMA Sec., Inc. v. Ruppert*, 80 F. Supp. 2d 786 (S.D. Ohio 1999)). Twenty-First correctly categorized these cases as "selling-away" cases.

The typical "selling away" case is where a registered representative of a FINRA member firm sells, or solicits the sale of securities to his customer not held or offered by the brokerage firm with which he is associated unbeknownst to the FINRA member firm. In these types of cases, courts have held that when a customer deals with a registered representative of a FINRA member firm, the customer is dealing with the FINRA member firm even if the FINRA member firm had no knowledge of its registered representative's acts. *See,* by way of example, *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352 (2d Cir. 1995), *John Hancock Life Ins. Co. v. Wilson,* 254 F.3d 48 (2d Cir. 2001); *Vestax Sec. Corp. v. McWood*, 280 F.3d 1078 (6th Cir. 2002). Twenty-First concludes that Dr. Crawford "does not allege that he was a customer of an 'associated person' of Twenty-First such that he may compel arbitration pursuant to FINRA Rule 1200" under these line of cases. *See* Twenty-First's Motion, pg. 14. Twenty-First's conclusion is without merit.

Dr. Crawford alleged he was a customer of Twenty-First's associated person through the legal claims, *inter alia,* failure to supervise and respondeat superior in his Statement of Claim

filed with FINRA. Moreover, Twenty-First acknowledged that its President, Robert Gordon, was the associated person who had conversations with Dr. Crawford and who sent Dr. Crawford materials regarding the 1861 Fund. *See* Section V(A)(i), *supra* and Twenty-First's Motion, pg. 4. Dr. Crawford relied upon the representations made by Mr. Gordon to invest in the 1861 Fund. *See* DBC Decl., ¶ 10-11. Therefore, Twenty-First's President, Robert Gordon, is the associated person who solicited and recommended that Dr. Crawford invest in the 1861 Fund. The acts of Twenty-First's President, Robert Gordon, are encompassed in the alleged legal claims in the Statement of Claim. Specifically, Dr. Crawford alleged as follows:

> "Twenty-First had a duty to diligently properly train, educate and supervise its registered representatives concerning the various risks associated with the hedge fund and the material developments adversely affecting the municipal bond market beginning in the summer of 2007 and continuing through early 2008. Twenty-First failed to exercise this duty. Twenty-First also failed to take any steps to ensure that its representatives made Claimant aware of the risks attendant to his Investment in 1861."

*See* RAU Decl., ¶ 3, Exhibit A, pgs. 8-9 ¶ 34-36. Further, Dr. Crawford alleged: "[A]n employer is vicariously liable for the torts of his employees committed within the scope of the employment." RAU Decl., ¶ 3, Exhibit A, pg. 9 ¶ 38.

Notwithstanding the fact that Dr. Crawford alleged he was a customer of Twenty-First's associated person and President, Robert Gordon, the facts in this case are more compelling than in the typical "selling away" case. As previously set forth, the typical "selling away" case involves a situation where the FINRA member firm did not know of the wrongful conduct of its associated person and did not receive any fee or other compensation and yet the courts found the FINRA member firm liable. In this case, not only did Twenty-First's President, Robert Gordon, solicit and recommend that Dr. Crawford invest in the 1861 Fund, but Twenty-First knew of Robert Gordon's conduct and made a written representation that it was the "referring broker" for the 1861 Fund transaction for which role it knew it would be paid.

**B.      Dr. Crawford's Dispute Arises in Connection with the Business Activities of Twenty-First**

As set forth in Section V (A), *supra,* Twenty-First acknowledged in writing that it was the "referring broker" for Dr. Crawford's investment in the 1861 Fund. Moreover, Twenty-First acknowledged in writing that it would receive a fee from the 1861 Fund as a result of its role as a "referring broker." In addition, the Disclosure Statement signed on June 7, 2007 by Dr. Crawford's nominee, memorialized that Twenty-First would receive a fee and set forth how the fee would be computed. Therefore, it cannot be disputed that Dr. Crawford's dispute arises in connection with the business activities of Twenty-First.

As set forth in Section V (A) and (B), *supra,* Dr. Crawford established (1) that he is a customer of Twenty-First and (2) that the dispute arises in connection with the business activities of Twenty-First. Therefore, Dr. Crawford has established the requirements for a "compulsory arbitration agreement" under FINRA Rules and case law. Moreover, Twenty-First has failed to satisfy the legal standard to prove "a likelihood of success on the merits." Given that Dr. Crawford was a customer of Twenty-First and requested arbitration of his disputes that arose in connection with Twenty-First's business activities, <u>Twenty-First has failed to present a strong prima facie case to justify the issuance of a preliminary injunction.</u>

**VI.      TWENTY-FIRST WILL NOT SUFFER IRREPARABLE HARM IF DR. CRAWFORD IS NOT ENJOINED FROM PROCEEDING WITH THE ARBITRATION**

Dr. Crawford does not dispute that forcing a party to arbitrate a matter the party never agreed to arbitrate will cause the party irreparable harm. However, these are not the facts in this case. As set forth in Section V (A) and (B), *supra,* by becoming a member of FINRA, Twenty-First has agreed to submit to FINRA rules, including FINRA Rule 12200, which requires

members to arbitrate disputes in connection with their business activities when arbitration is requested by a customer (*i.e.*, "a compulsory arbitration agreement"). Dr. Crawford as a customer requested arbitration of his disputes arising from Twenty-First's President's, Robert Gordon's, solicitation and recommendation that Dr. Crawford invest in the 1861 Fund, upon which Dr. Crawford relied (*See* DBC Decl., ¶ 10-11), for which Twenty-First was paid a solicitation fee.[10] Accordingly, per FINRA Rules, Twenty-First agreed to arbitrate this matter and cannot meet the "actual and imminent" irreparable harm legal standard. Therefore, Twenty-First's Motion should be denied.

## VII. THE BALANCE OF THE HARDSHIPS DOES NOT TIP DECIDEDLY IN TWENTY-FIRST'S FAVOR

Twenty-First argues: "Refusing to enjoin the arbitration, however, would compel Twenty-First to expend time and resources to defend [itself] in an arbitration to which [it] may ultimately be determined not to have been a proper party, and any award would be unenforceable." Twenty-First's Motion, pg. 16 (citing *Citigroup*, 2008 WL 4831229, at *6) (internal quotations omitted). However, Twenty-First fails to acknowledge that arbitration is a less expensive form of adjudication. The Second Circuit recognizes that "[a]rbitration is intended to provide the parties to a dispute with a ***speedy and relatively inexpensive*** trial before specialists."[11] Nonetheless, as Twenty-First is doing here, parties routinely undertake "herculean efforts to avoid resolution of disputes through arbitration." *Smoothline*, 249 F.3d at 148. Dr.

---

[10] The fact that Twenty-First received the solicitation fee from the 1861 Fund is not relevant. What is relevant is that the solicitation fee was the incentive for Twenty-First to solicit and recommend to its customers, including Dr. Crawford, to invest in the 1861 Fund.

[11] *Smoothline Ltd. v. N. Am. Foreign Trading Corp.*, 249 F.3d 147, 148 (2d Cir. 2001) (citing *Conticommodity Servs., Inc. v. Philipp & Lion*, 613 F.2d 1222, 1224 (2d Cir. 1980)) (emphasis added); *see also Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22 (the congressional intent of the Arbitration Act was to facilitate quick, expeditious arbitration).

Crawford has a right, as a customer of a FINRA member, to inexpensive resolution of his claims against Twenty-First through arbitration.

Twenty-First further argues: "Crawford would not suffer any damages if it were wrongfully enjoined from proceeding with the FINRA Arbitration." Twenty-First's arguments are meritless. If Dr. Crawford's FINRA arbitration is preliminarily enjoined, Dr. Crawford's right to a speedy arbitration would be frustrated. In *UBS Fin. Servs.* 760 F. Supp. 2d at 379, the court did not find the balance of the hardships test to tip in the plaintiff broker-dealer's favor and denied the motion for a preliminary injunction as follows:

> The Court is not persuaded that, even if there were sufficiently serious questions going to the merits of this case, the balance of hardships tips decidedly in [plaintiff broker-dealer's] favor. Rather the Court finds that further delay of these proceedings would frustrate [defendant customer's] right to a speedy arbitration of their claims. This hardship is not outweighed by any potential hardship to [plaintiff broker-dealer]. Therefore, the Court holds that [plaintiff broker-dealer] has not satisfied its burden as to this prong. *See MyWebGrocer, LLC v. Hometown Info, Inc.*, 375 F.3d 190, 194 (2d Cir. 2004) (affirming denial of injunction where balance of hardships was found to be "equal").

Further delay through an injunction will frustrate Dr. Crawford's right to speedy arbitration of its claims. Therefore, Dr. Crawford will suffer damages and the costs of granting the preliminary injunction outweigh the benefits.

Accordingly, Twenty-First's motion for a preliminary injunction should be denied.

Dated: October 3, 2011

Respectfully submitted,

AIDIKOFF, UHL & BAKHTIARI

By:_____

Robert A. Uhl, Esq., (RU0842)
9454 Wilshire Boulevard, Suite 303
Beverly Hills, California 90212
Telephone: (310) 274-0666
robertauhl@aol.com
*Attorneys for Defendant, Dr. Byron Crawford.*

19