UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TWENTY-FIRST SECURITIES
CORPORATION,

                      Plaintiff,

-against-

DR. BYRON CRAWFORD,

                      Defendant.

Case No. 11-cv-6406 (WHP)

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Daniel Gildin (DG9555)
Kevin M. Shelley (KS8149)
KAUFMANN GILDIN ROBBINS
& OPPENHEIM LLP
777 Third Avenue
New York, New York 10017
212.755.3100
dgildin@kaufmanngildin.com
kshelley@kaufmanngildin.com

*Attorneys for Plaintiff*
*Twenty-First Securities Corporation*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

    I.    NEW YORK IS THE PROPER FORUM TO HEAR THIS DISPUTE ...................................... 3

    II.    THE DISPUTE IS NOT ARBITRABLE UNDER FINRA'S RULES ....................................... 7

        A.    Crawford Is Not a Customer of Twenty-First ................................................................ 7

        B.    Crawford Is Not a Customer of Robert Gordon ............................................................. 12

    III.    TWENTY-FIRST WILL SUFFER IRREPARABLE HARM IF CRAWFORD IS NOT ENJOINED FROM PROCEEDING WITH THE FINRA ARBITRATION ................................................................................................. 14

    IV.    THE BALANCE OF THE HARDSHIPS TIPS DECIDEDLY IN TWENTY-FIRST'S FAVOR .......................................................................................... 14

CONCLUSION ............................................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**

*Bensadoun v. Jobe-Riat,*
   316 F.3d 171 (2d Cir. 2003) .................................................................................................9, 12

*Citigroup Global Mkts, Inc. v. VCG Special Opportunities Master Fund Ltd.,*
   2008 WL 4891229 (S.D.N.Y. 2008) ..............................................................................................3

*Contemporary Fin. Solutions, Inc. v. Miller,*
   2007 WL 4197588 (D. Col. 2007) .................................................................................................9

*Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.,*
   264 F.3d 770 (8th Cir. 2001) ...................................................................................................9, 12

*Gone to the Beach LLC v. Choice Point Serv., Inc.,*
   434 F.Supp.2d 534 (W.D. Tenn. 2006) ........................................................................................5

*Interactive Brokers, LLC v. Duran,*
   2009 WL 393827 (N.D. Ill. 2009) ...........................................................................................3, 15

*J.P. Morgan Securities, Inc. v. Louisiana Citizens Prop. Ins. Corp.,*
   712 F.Supp.2d 70 (S.D.N.Y. 2010) ......................................................................................1, 4, 6

*Kelly v. Whitehaven Settlement Funding, LLC,*
   2010 WL 746983 (S.D. Ill. 2010) ..................................................................................................6

*Kipany Prods. Ltd. v. RMH Teleservices, Inc.,*
   1997 WL 706445 (S.D.N.Y. 1997) ................................................................................................6

*L.F. Rothschild & Co., Inc. v. Katz,*
   702 F.Supp. 464 (S.D.N.Y. 1988) .................................................................................................5

*Maronian v. American Comm. Network, Inc.,*
   2008 WL 141753 (W.D.N.Y. 2008) ..............................................................................................5

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer,*
   49 F.3d 323 (7th Cir. 1995) ...........................................................................................................5

*ProShares Trust v. Schnall,*
   695 F.Supp.2d 76 (S.D.N.Y. 2010) ............................................................................................11

*Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc.,*
   269 F.Supp.2d 356 (S.D.N.Y. 2003) ............................................................................................5

*Textile Unlimited, Inc. v. A. Bmh & Co.,*
   240 F.3d 781 (9th Cir. 2001) .........................................................................................................5

*UAL Corp. v. Mesa Airlines, Inc.,*
   88 F.Supp.2d 910 (N.D. Ill. 2000) ................................................................................................6

*UBS Financial Services, Inc. v. West Virginia Univ. Hosp., Inc.,*
   2011 WL 4839991 (2d Cir. Sept. 22, 2011) .................................................................................9

**Statutes**

9 U.S.C. §4 ..........................................................................................................................................4, 5
FINRA Rule 12200 .................................................................................................2, 7, 8, 10, 11, 13, 14
FINRA Rule 12213(a)(3) ........................................................................................................................3
FINRA Rule 12503(c)(2) ........................................................................................................................3

## PRELIMINARY STATEMENT

Plaintiff Twenty-First Securities Corporation ("Twenty-First") respectfully submits this reply memorandum of law in support of its motion for an Order enjoining the FINRA Arbitration.[1]

Crawford's jurisdictional argument is unavailing. Its contention that the Federal Arbitration Act ("FAA") mandates that this action be brought in California misstates both the facts and the law. The arbitration has not been definitely set for Los Angeles (Crawford merely requests Los Angeles as the location for the hearing) and, in any event, nothing in the FAA or the case law requires that an action to **enjoin** an arbitration be brought in the same district where the arbitration would potentially take place. Indeed, in *J.P. Morgan Securities, Inc. v. Louisiana Citizens Prop. Ins. Corp.*, 712 F.Supp.2d 70 (S.D.N.Y. 2010), Judge Scheindlin held, under nearly identical circumstances, that this Court has jurisdiction to enjoin a FINRA arbitration that is scheduled to be heard outside of the Southern District of New York (although it may not **compel** a party to participate in an arbitration outside of the Southern District).

As for the merits of the motion, try as he might, Crawford cannot escape the fact that he simply had no customer relationship with Twenty-First, and that the only customer relationship relevant to the investments referred to in the FINRA Statement of Claim was between Rahn & Bodmer (Crawford's alleged nominee[2]) and 1861 Capital. Crawford has not identified or produced a single document demonstrating that he purchased any goods or services from Twenty-First, or otherwise establishing a customer relationship between them. Instead,

---

[1] Capitalized terms not otherwise defined shall have the same meanings as those ascribed to them in Twenty-First's Complaint and Opening Brief.

[2] Although the Statement of Claim alleges that Rahn & Bodmer is Crawford's "nominee," Twenty-First has no knowledge of the relationship between Crawford and Rahn & Bodmer, and has no personal knowledge of Rahn & Bodmer's investment, if any, with 1861 Capital. *Gordon Dec.*, ¶6-10.

162542                                    1

Crawford relies exclusively on the Disclosure Statement and an e-mail from a representative of Twenty-First in which Twenty-First is referred to as a "referring broker." However, it is clear from the full text of that e-mail, and the Disclosure Statement signed by Rahn & Bodmer, that the "referring broker" relationship was between Twenty-First and 1861 Capital. That fully disclosed relationship is not relevant to, and certainly does not establish, a customer relationship between Twenty-First and Crawford.

Simply put, Crawford is multiple steps away from being a customer of Twenty-First. According to the Statement of Claim, Crawford did not purchase any securities. The purchase at issue was made by an entity named Rahn & Bodmer, which Crawford claims is his nominee. Unfortunately, no evidence whatsoever has been presented to this Court to demonstrate the nature of Crawford's relationship to Rahn & Bodmer (if any); Rahn & Bodmer is not a named party in the arbitration; and no affidavit of anyone from Rahn & Bodmer has been submitted by Crawford. As a result, this Court simply has nothing on which to base any conclusion that Crawford had any involvement in the purchase of any securities (much less the purchase of any securities from Twenty-First).

Not only is there no evidence in the record to show that Crawford ever purchased any securities, it is undisputed that no securities were ever purchased by anyone from or though Twenty-First. To the extent securities were purchased, they were purchased from 1861 Capital by Rahn & Bodmer. Crawford has not demonstrated that he was even a customer of 1861 Capital (much less Twenty-First). And, he has not demonstrated that he had anything to do with Rahn & Bodmer's purchase. The only "customer" was Rahn & Bodmer and the only entity it was a "customer" of was 1861 Capital. It has made no complaint, either of 1861 Capital or of Twenty-First. The end result of all this is that Rahn & Bodmer – not Crawford – bought

securities from 1861 Capital – not Twenty-First – and Crawford wants to claim that, with regard to this purchase, he was a customer of Twenty-First. Such a result strains the imagination.

Because Crawford has not established the existence of any relationship between him and Twenty-First, much less the customer relationship required to implicate FINRA Rule 12200, the Court should enjoin the FINRA Arbitration.

## ARGUMENT

### POINT I

### NEW YORK IS THE PROPER FORUM TO HEAR THIS DISPUTE

Crawford argues that this Court has no power to hear the instant dispute because the FINRA Arbitration is currently pending in Los Angeles, California.[3] *Defendant's Memorandum*, Point III. Crawford is mistaken, and Judge Scheindlin expressly rejected this argument only last year.

Crawford bases his jurisdictional argument on the text of the FAA, a statute not cited in the Complaint or necessarily a required basis for an issuance of a injunction. *See., e.g. Citigroup Global Mkts, Inc. v. VCG Special Opportunities Master Fund Ltd.,* 2008 WL 4891229 (S.D.N.Y. 2008) (enjoining FINRA arbitration without reference to FAA); *Interactive Brokers, LLC v. Duran,* 2009 WL 393827 (N.D. Ill. 2009) (enjoining arbitration against movant, without reference to FAA, in Dallas, Texas, Houston, Texas, and Madison, Wisconsin). The plain terms

---

[3] Fundamentally, the arbitration is not venued in Los Angeles. Rather, it is before FINRA, or, more properly stated, before the Director of Dispute Resolution, who is located in New York. Crawford can point to no contract between the parties that sets a location for a potential arbitration, nor is there any FINRA rule that requires that this matter be arbitrated in Los Angeles. Crawford's assertion that the potential arbitration is venued in Los Angeles is based on a preliminary FINRA letter to the parties stating that the anticipated hearing location is Los Angeles. But as the applicable FINRA rules make clear, Twenty-First has every right to challenge this tentative determination before a panel is even appointed. See FINRA Rule 12503(c)(2) ("Motions relating to... changing the hearing location are decided by the Director before a panel is appointed."); *see also,* FINRA Rule 12213(a)(3) ("The Director may change the hearing location upon motion of a party."). Thus, the mere fact that Crawford has requested a Los Angeles hearing does not necessarily mean that hearings will take place at that location.

of the FAA pertain to compelling arbitration and enforcing arbitration awards, and not explicitly to enjoining improper arbitrations. Indeed, the text that serves as the focus of Crawford's jurisdictional argument concerns the location of an arbitration ordered by a court, and not the power of a court to enjoin an arbitration. *See,* 9 U.S.C. § 4 ("The hearing and proceedings, under such [arbitration] agreement, shall be within the district in which the petition for an order directing such arbitration is filed.").

Crawford has not cited a single case where a federal district court has held that it had no jurisdiction to enjoin an arbitration proceeding because the arbitration was scheduled to take place in another judicial district. And just last year, Judge Scheindlin of this Court squarely held to the contrary.

In *J.P. Morgan Securities, Inc. v. Louisiana Citizens Property Ins. Corp., supra,* Judge Scheindlin addressed the relationship between 9 U.S.C. §4 and the court's power to enjoin an arbitration proceeding. In that case, plaintiff J.P. Morgan sought to enjoin a FINRA arbitration proceeding which had been preliminarily venued in New Orleans, Louisiana. The defendant/arbitration claimant argued, *inter alia,* that the court had no jurisdiction to enjoin an arbitration outside of the district. The court denied J.P. Morgan's motion to enjoin the FINRA arbitration proceeding on the merits, but declined to issue an order compelling J.P. Morgan to participate in that arbitration – the usual effect of an order denying a motion to enjoin arbitration – as the arbitration was scheduled to be heard outside of the Southern District. Judge Scheindlin explained the distinction between a motion to enjoin and a motion to compel:

> In general, a court order denying a petition to enjoin an arbitration has an identical effect to an order compelling that arbitration. Petitions to compel and petitions to enjoin are two sides of the same coin. If the court determines there is an applicable agreement to arbitrate, the parties are compelled to arbitrate the covered dispute. If the court determines that

162542                                              4

> there is no applicable agreement to arbitrate, the arbitration cannot
> proceed. In this instance, however, this Court lacks the authority to
> compel the arbitration because it is scheduled to occur outside of the
> Southern District of New York. *J.P. Morgan Securities, Inc.*, 712
> F.Supp.2d at 80.

Section 4 of the FAA does not divest this Court of jurisdiction to enjoin a FINRA arbitration in the event that arbitration is venued outside of the Southern District. Rather, the venue provision therein applies only to petitions to compel arbitration. In fact, courts routinely enjoin arbitrations that would otherwise take place in other districts. For example, in *Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc.*, 269 F.Supp.2d 356 (S.D.N.Y. 2003), the court held that "where a federal court lacks authority pursuant to 9 U.S.C. §4 to compel arbitration outside its district, the court may still determine that the dispute nonetheless remains 'referable to arbitration' elsewhere." *See, also, L.F. Rothschild & Co., Inc. v. Katz*, 702 F.Supp. 464 (S.D.N.Y. 1988) (enjoining arbitration pending before the Chicago Board of Exchange); *Maronian v. American Comm. Network, Inc.*, 2008 WL 141753 (W.D.N.Y. 2008) (enjoining arbitration in Michigan and holding that "FAA §4 does not support [the] broad contention [that a court may not reach beyond the borders of its district to either compel or stay arbitration]"); *Textile Unlimited, Inc. v. A. Bmh & Co.*, 240 F.3d 781 (9th Cir. 2001) (affirming order preliminarily enjoining pending arbitration in Georgia and noting that "nothing in the Federal Arbitration Act… requires that Textile's action to enjoin arbitration be brought in a district where the contract designated the arbitration to occur"); *Gone to the Beach LLC v. Choice Point Serv., Inc.*, 434 F.Supp.2d 534 (W.D. Tenn. 2006) ("court within district where arbitration is venued is not the only court that has the authority to determine preliminary matters of arbitrability").

Although Crawford urges this Court to follow the "Seventh Circuit's reasoning," the Seventh Circuit case upon which it relies involved a motion to compel (not enjoin) arbitration in Illinois, an undisputed agreement to arbitrate and an established arbitration venue in Florida. Thus, it is easily distinguishable. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323 (7th Cir. 1995). Crawford's other cited cases from within the Seventh Circuit are equally distinguishable. *See Kelly v. Whitehaven Settlement Funding, LLC*, 2010 WL 746983 (S.D. Ill. 2010) (transferring action to New York where "contract also contains an arbitration clause that requires the parties to arbitrate in New York" and defendant had filed a motion to compel – not enjoin – arbitration in New York); *UAL Corp. v. Mesa Airlines, Inc.*, 88 F.Supp.2d 910 (N.D. Ill. 2000) (transferring action to enjoin or stay arbitration to Colorado where Denver, Colorado was contractually mandated venue for arbitration). By contrast, here there is no arbitration agreement, let alone one requiring arbitration in California.

Crawford's reliance on two Southern District cases – *Kipany Prods. Ltd. v. RMH Teleservices, Inc.*, 1997 WL 706445 (S.D.N.Y. 1997) and *J.P. Morgan Securities, Inc. v. Louisiana Citizens Property Ins. Corp., supra* – is also unavailing. In each of those cases, the court concluded that the district court had jurisdiction to enjoin an arbitration scheduled to occur outside of the Southern District, even while acknowledging that the district court had no power to compel the parties to proceed to arbitrate outside of the district. In this case, Twenty-First seeks an Order staying the FINRA Arbitration. There is no motion before the Court to compel the parties to participate in the FINRA Arbitration.

In conclusion, because there is no statute or case law which divests this Court of jurisdiction to determine Twenty-First's motion to enjoin the FINRA Arbitration, and since Judge Scheindlin just last year squarely held that the district court has the power to enjoin an

arbitration, even if that arbitration is scheduled to occur outside of the district, this Court should reject Crawford's argument and proceed to the merits of Twenty-First's application.

## POINT II

## THE DISPUTE IS NOT ARBITRABLE UNDER FINRA'S RULES

Crawford concedes that there is no express agreement between the parties to arbitrate any disputes and, as such, Twenty-First may be compelled to arbitrate only if the requisites of FINRA Rule 12200 are satisfied. FINRA Rule 12200 requires the parties to arbitrate disputes only where: (1) the arbitration is required by agreement or is requested by a customer; (2) the dispute is between a customer and a FINRA member or "associated person" of a member; and, (3) the dispute arises in connection with the business activities of the member or associated person.

### A. Crawford Is Not a Customer of Twenty-First

In its Opening Brief, Twenty-First demonstrated that Crawford is not a "customer" of Twenty-First as that term has been applied in the context of Rule 12200. In response, Crawford has not produced a single document evidencing, or even referring to, a customer relationship between Twenty-First and Crawford. Crawford does not provide any brokerage agreement, opening account agreement or account statements. It is undisputed that Crawford never paid Twenty-First for investment services or advice and never had an account of any kind with or through Twenty-First. It is further undisputed that Twenty-First never had any responsibility for the management or investment of Crawford's funds.

In fact, Crawford is multiple steps away from being a customer of Twenty-First. According to the Statement of Claim, Crawford did not purchase any securities. The purchase at issue was made by an entity named Rahn & Bodmer, which Crawford claims is his nominee.

Unfortunately, no evidence whatsoever has been presented to this Court to demonstrate the nature of Crawford's relationship to Rahn & Bodmer (if any); Rahn & Bodmer is not a named party in the arbitration; and no affidavit of anyone from Rahn & Bodmer has been submitted by Crawford. As a result, this Court simply has nothing on which to base any conclusion that Crawford had any involvement in the purchase of any securities (much less the purchase of any securities from Twenty-First).

Not only is there no evidence in the record to show that Crawford ever purchased any securities, it is undisputed that no securities were ever purchased by anyone from or though Twenty-First. To the extent securities were purchased, they were purchased from 1861 Capital by Rahn & Bodmer. Crawford has not demonstrated that he was even a customer of 1861 Capital (much less Twenty-First). And, he has not demonstrated that he had anything to do with Rahn & Bodmer's purchase. The only "customer" was Rahn & Bodmer and the only entity it was a "customer" of was 1861 Capital. It has made no complaint, either of 1861 Capital or of Twenty-First. The end result of all this is that Rahn & Bodmer – not Crawford – bought securities from 1861 Capital – not Twenty-First.

Crawford relies upon the conclusory allegation in the Statement of Claim that Twenty-First recommended that Crawford invest with 1861 Capital[4] and the acknowledged relationship between Twenty-First and 1861 Capital (referred to both in the Disclosure Statement and in an e-mail exchanged between counsel for Crawford and the general counsel of Twenty-First). Neither Crawford's allegations nor the relationship between Twenty-First and 1861 Capital establishes the requisite customer relationship. Because Crawford has failed to establish that he is a

---

[4] This allegation is false. Twenty-First merely referred Crawford to 1861 Capital and Crawford specifically acknowledged, in the Disclosure Statement, that Twenty-First was not authorized to, and did not, make any representations concerning 1861 Capital or The 1861 Fund. *Gordon Decl.,* ¶4-11.

162542                                                      8

customer of Twenty-First for purposes of FINRA Rule 12200, FINRA rules do not require arbitration of his claim against Twenty-First and, in the absence of an agreement between the parties, Twenty-First simply cannot be compelled to arbitrate.

First, Crawford repeats the vague allegations in his Statement of Claim that: "[Twenty-First] acted as [Crawford's] stockbroker and agent in soliciting and recommending securities to [Crawford]." *Statement of Claim*, ¶18; *see, also, Crawford Declaration*, ¶6-11. However, these vague allegations do not render Crawford a customer of Twenty-First.

Twenty-First did refer Crawford to 1861 Capital, but making that referral is simply not the same as serving as financial advisor or broker, or giving financial advice. Moreover, courts have made clear that providing advice only – as opposed to providing investment or brokerage services – does not give rise to a customer relationship. *See Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.*, 264 F.3d 770 (8th Cir. 2001); *Contemporary Fin. Solutions, Inc. v. Miller*, 2007 WL 4197588 (D. Col. 2007). Certainly, the mere act of responding to inquiries and referring Crawford to 1861 Capital cannot establish the brokerage relationship sufficient to render Crawford a "customer" of Twenty-First.

The courts have refrained from providing a comprehensive definition of the term "customer" for purposes of FINRA Rule 12200. However, the Second Circuit recently applied a common sense and dictionary-based meaning of customer to include a non-broker or non-dealer "who purchases, or undertakes to purchase, a good or service from a FINRA member." *UBS Financial Services, Inc. v. West Virginia Univ. Hosp., Inc.*, 2011 WL 4839991 (2d Cir. Sept. 22, 2011). While not exclusive, the Second Circuit's recognition that there must be some commercial transaction between the parties to establish a "customer" relationship is consistent with the Eighth Circuit's holding that a "customer" must demonstrate, at a minimum, "some

brokerage or investment relationship between the parties." *Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.*, 264 F.3d 770, 772 (8th Cir. 2001) (cited with approval in *Bensadoun v. Jobe-Riat*, 316 F.3d 171 (2d Cir. 2003). Crawford engaged in no transactions with Twenty-First, and the alleged communications between Crawford and Twenty-First fall far short of this standard.

Crawford next points to the Disclosure Statement and the Siegel e-mail to buttress his contention that a brokerage relationship existed w. Crawford suggests that the Disclosure Statement and e-mail are compelling evidence of a broker relationship. *Crawford's Memorandum*, p. 12. Yet, when the Court reviews the Disclosure Statement and the Siegel e-mail, it will become apparent that these documents are consistent and address only the relationship between Twenty-First and 1861 Capital. The Disclosure Statement, signed by Rahn & Bodmer, discloses that Twenty-First entered into an agreement with 1861 Capital under which Twenty-First first receives a fee from 1861 Capital for accounts Twenty-First refers to become investors in The 1861 Fund. Nothing in the Disclosure Statement suggests or implies a brokerage relationship between Twenty-First and Rahn & Bodmer, much less Crawford.

Similarly, the Siegel e-mail characterizes the relationship between Twenty-First and 1861 Capital, and not the relationship between Twenty-First and Rahn & Bodmer or Crawford. The Siegel e-mail was sent in response to an e-mail inquiry from Crawford's counsel, Michael W. Johnson, Esq. In that e-mail, Mr. Johnson, on behalf of Crawford, propounds several questions concerning Crawford's investment in The 1861 Fund, and further asks: "Please clarify whether you have any relationship with 1861, especially if that relationship might impair your ability to provide an independent opinion on this issue." *Johnson Declaration*, Exhibit A. In response to this e-mail, Mr. Siegel, Twenty-First's General Counsel at the time, states: "To answer your first

question, the role of Twenty-First vis-à-vis 1861 Capital is that of a referring broker." *Johnson Declaration*, Exhibit B.

Thus, the Siegel e-mail only confirms what Rahn & Bodmer and Crawford already knew by reason of Rahn & Bodmer's execution of the Disclosure Statement: that Twenty-First served as a "referring broker" to 1861 Capital. Clearly, the Siegel e-mail does not state that Twenty-First served as a "referring broker" to Rahn & Bodmer or Crawford, nor would such a statement make sense.

In short, Crawford's reliance on the disclosed relationship between Twenty-First and 1861 Capital is entirely misplaced. That relationship has no bearing on whether Twenty-First served as Crawford's broker, or whether Crawford can establish that he was a "customer" of Twenty-First for purposes of FINRA Rule 12200. Because Crawford has failed to submit to the Court any evidence of such a brokerage relationship, the Court should decline to simply take his word for it, ignoring the undisputed facts and controlling precedent.

To be sure, the definition in Rule 12200(i) -- that [a] customer shall not include a broker or dealer -- does not resolve the issue. Crawford's argument that he is a customer because he is not a broker or dealer (Crawford Memorandum, p. 9) was recently rejected by a court within this district as an "untenable interpretation" and "absurd." *See UBS Sec. LLC v. Voegeli*, 684 F.Supp.2d 351 (S.D.N.Y. 2010), *aff'd,* 405 Fed. Appx. 550 (2d Cir. 2011). The express exclusion of brokers and dealers in the Rule is consistent with the view "customer" applies to purchasers of or investors in securities -- see Twenty-First's Opening Brief, p. 7-10. The exclusion simply prevents brokers or dealers who purchase securities for resale from obtaining "customer" status.

Crawford attempts to distinguish *UBS Sec. LLC v. Voegeli, supra* and *ProShares Trust v. Schnall*, 695 F.Supp.2d 76 (S.D.N.Y. 2010) – both of which enjoined FINRA arbitrations because the arbitration claimants were not customers of the FINRA member – by arguing that these cases are not inconsistent with Crawford being a customer of Twenty-First. *Crawford Memorandum*, p. 13-14. However, in each of these cases, the court enjoined the FINRA arbitration because the arbitration claimants did not "establish at a minimum, some brokerage or investment relationship between the parties." *Fleet Boston, supra*, 264 F.3d at 772; *see, also, Bensadoun v. Jobe-Riat,* 316 F.3d 171 (2d Cir. 2003). The facts are different, of course, but the legal reasoning is compelling. Again, Crawford has not established a brokerage or investment relationship between himself and Twenty-First. Indeed, he is two steps removed from being a customer of Twenty-First. Not only did he have no account with Twenty-First, he is not even the purchaser of the interest in The 1861 Fund that is the subject of his claim. As such, just like the arbitration claimants in *Voegeli* and *ProShares Trust*, Crawford has not satisfied the *Fleet Boston/Bensadoun* standard to meet the definition of "customer" in FINRA Rule 12200.

**B. Crawford Is Not a Customer of Robert Gordon**

As predicted, Crawford argues that he should be considered a customer of Twenty-First because he was a customer of an "associated person" of Twenty-First, Robert Gordon, under the authority of the "selling away" cases discussed in Twenty-First's Opening Brief.[5]

However, under the circumstances in this case, Crawford's argument is circular. He argues that he is a customer of Twenty-First because he was a customer of Mr. Gordon. However, the record is devoid of any indicia or evidence that he was a customer of either Twenty-First or Mr. Gordon. Indeed, the record before the Court – including the Gordon

---

[5] See Twenty-First's Opening Brief, Point I.A.3.

Declaration, the Disclosure Statement and the lack of any agreement between Twenty-First or Gordon, on the one hand, and Crawford – virtually compel the conclusion that no customer relationship existed between Crawford and either Twenty-First or Mr. Gordon. Again, Crawford is two steps removed from "customer" status, since he is not even the entity who purchased an interest in The 1861 Fund.

As discussed in Twenty-First's Opening Brief, the rationale of the "selling away" cases is that a member firm should be responsible for the activities of its associated persons, even when those persons engage in activities unknown to the member firm – since the associated persons are acting as the member firm's disclosed agents. In each of those cases, the customer actually gave the rogue broker money to invest – not the case here. Further, there is no allegation that Mr. Gordon acted without the knowledge of Twenty-First, or that he entered into any agreements or relationships with Crawford with the knowledge of Twenty-First. As such, these "selling away" cases are factually and legally inapposite.

And, certainly, the allegations in the Statement of Claim that Twenty-First failed to train and/or supervise its registered representatives cannot possibly sustain a finding that Crawford was a customer of Mr. Gordon.

In short, Twenty-First has established a likelihood of success on the merits by demonstrating that Crawford is not a "customer" of Twenty-First or Mr. Gordon as that term is used in FINRA Rule 12200.

## POINT III

### TWENTY-FIRST WILL SUFFER IRREPARABLE HARM IF CRAWFORD IS NOT ENJOINED FROM PROCEEDING WITH THE FINRA ARBITRATION

It is black-letter law that a party that has not agreed to arbitrate a dispute will suffer irreparable harm if forced to submit to arbitration. *See, Twenty-First Opening Brief*, Point II. Crawford concedes this point. *Crawford Memorandum*, Point VI ("Dr. Crawford does not dispute that forcing a party to arbitrate a matter the party never agreed to arbitrate will cause the party irreparable harm.").

Crawford goes on to argue that Twenty-First will not suffer irreparable harm because it is obligated to arbitrate under FINRA Rule 12200. However, presuming, *arguendo*, that the Court finds that Crawford is not a customer of Twenty-First or Mr. Gordon for purposes of FINRA Rule 12200, the law is clear that irreparable harm will arise absent the injunction, and Crawford concedes as much.

As such, the second element of the preliminary injunction standard has been established.

## POINT IV

### THE BALANCE OF THE HARDSHIPS TIPS DECIDEDLY IN TWENTY-FIRST'S FAVOR

Of course, the Court need only reach a balance of the hardship inquiry if it does not find that Twenty-First is likely to succeed on the merits, and instead concludes that there are serious questions that go to the merits. For the reasons stated in Point I, *supra* and in its Opening Brief, Twenty-First is highly likely to succeed on the merits.

In any event, the balance of hardships tips decidedly in Twenty-First's favor. *See, Twenty-First Opening Brief*, Point III. Refusing to enjoin the arbitration would compel Twenty-First to expend time and resources to defend itself in an arbitration to which it may ultimately be

determined not to have been a proper party. On the other hand, if the Court were to erroneously grant the preliminary injunction, the only harm to Crawford would be a delay in asserting his claims in a FINRA arbitration.

Crawford argues that Crawford has a right, as a customer of a FINRA member, to inexpensive resolution of his claims against Twenty-First through FINRA arbitration. But, of course, that begs the point. The balance of the hardships inquiry asks which of the two parties would suffer most grievously if the preliminary injunction motion were wrongly decided. If the Court wrongly declines to enjoin the arbitration, Twenty-First will suffer irreparable harm. If the Court erroneously grants the injunction, Crawford will not be damaged or suffer any harm at all, but will merely experience a brief delay in the assertion of his FINRA arbitration claims. The balance of these two prospective harms tips decidedly in Twenty-First's favor.

In *Interactive Brokers, LLC v. Duran*, 2009 WL 393827 (N.D. Ill. 2009), the district court, in granting a motion to enjoin a FINRA arbitration proceeding, essentially adopted Twenty-First's argument concerning the balancing of the harms:

> The harm that Defendants [arbitration claimants] would suffer if the Court issues an erroneous preliminary injunction would be a delay in the arbitration proceedings while this Court determines whether Interactive can be forced to arbitrate. If the Court ultimately rules in favor of Defendants on Count II of Interactive's Complaint, Defendants could proceed with their arbitrations at that time. On the one hand, and in light of Interactive's likelihood of success on the merits, the harm that Interactive would suffer if the injunctive were erroneously denied would be irreparable, as Interactive would have been compelled to arbitrate a dispute that it did not agree to arbitrate. *Id.* Given that a preliminary injunction simply will delay the arbitration in its early stages until the Court conclusively decides the underlying issues, the balance of hardships tips in Interactive's favor. *Interactive Brokers, LLC, supra,* at *6.

The *Interactive* court's reasoning applies with equal force in this case.

## CONCLUSION

For the foregoing reasons, Plaintiff Twenty-First respectfully requests that this Court issue an Order preliminarily enjoining Crawford from pursuing his claims in the FINRA Arbitration proceeding.

Dated: New York, New York
October 10, 2011

KAUFMANN GILDIN ROBBINS
& OPPENHEIM LLP

By: _____
Daniel Gildin (DG9555)
Kevin M. Shelley (KS8149)
777 Third Avenue
New York, New York 10017
212.755.3100
dgildin@kaufmanngildin.com
kshelley@kaufmanngildin.com

*Attorneys for Plaintiff*
*Twenty-First Securities Corporation*

162542

16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TWENTY-FIRST SECURITIES
CORPORATION,

                       Plaintiff,

-against-

DR. BYRON CRAWFORD,

                       Defendant.

**CERIFICATION OF SERVICE**

Case No. 11 cv 6406 (WHP)

Daniel Gildin, a member of the bar of this court, hereby certifies that on October 10, 2011, a copy of plaintiff's Reply Memorandum of Law, dated October 10, 2011, was served upon all parties in interest by filing it with the Court's ECF electronic filing system and by e-mailing a copy to Defendant's counsel, listed below:

            Phillip M. Aidikoff, Esq.
            Aidikoff, Uhl & Bakhtiari
            9454 Wilshire Boulevard, Suite 303
            Beverly Hills, CA  90212

Dated:    New York, New York
           October 10, 2011

                                                    Daniel Gildin (DG-9555)

162542

17