UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
TWENTY-FIRST SECURITIES CORP.,         :

                Plaintiff,         :

        -against-                  :

DR. BYRON CRAWFORD.,                   :

             Defendant.         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, District Judge:

11 Civ. 6406 (WHP)

MEMORANDUM & ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/15/11

        Twenty-First Securities Corporation ("Twenty-First") seeks to preliminarily

enjoin a Financial Industry Regulatory Authority ("FINRA") arbitration proceeding filed by Dr.

Byron Crawford ("Dr. Crawford"). For the following reasons, Twenty-First's motion for a

preliminary injunction is denied.

## BACKGROUND

        Twenty-First is a brokerage and investment firm with its principal place of

business in New York. (Complaint, dated Sept. 13, 2011 ("Compl.") ¶ 4.) Dr. Crawford is a

California resident. (Compl. ¶ 5.) From 2004 to 2007, Dr. Crawford and his wife, Jill Crawford,

periodically sought investment advice from Robert Gordon ("Gordon"), the President of Twenty-

First. (Declaration of Dr. Byron Crawford in Support of Opposition to Plaintiff's Motion for a

Preliminary Injunction, dated Sept. 29, 2011 ("Crawford Decl.") ¶¶ 3-5.) In May 2006, Dr.

Crawford asked Gordon to recommend income yielding investments to him. (Crawford Decl. ¶

5.) Gordon sent certain materials to the Crawfords that were prepared by 1861 Capital

Management LLC ("1861 Capital") regarding the 1861 Capital Discovery Domestic Fund, LP

-1-

("the Fund"). (Declaration of Robert Gordon in Support of Plaintiff's Motion for a Preliminary Injunction, dated Sept. 13, 2011 ("Gordon Decl.") ¶ 4.) Gordon advised Jill Crawford to contact 1861 Capital directly if she had further questions about the Fund. (Gordon Decl. ¶ 4.)

In February 2007, Dr. Crawford invested $6 million in the Fund through Rahm & Bodmer, a Swiss investment firm. (Crawford Decl. ¶ 11.) 1861 Capital and Rahm & Bodmer executed a Disclosure Statement acknowledging that Twenty-First was not an agent or employee of 1861 Capital, but stating that 1861 Capital would pay a solicitation fee to Twenty-First. (Crawford Decl., Ex. B at 1.)

On March 6, 2008, Dr. Crawford's attorney, Michael Johnson ("Johnson"), e-mailed Gordon about the Crawfords concerns with their investment in the Fund. (Declaration of Michael W. Johnson, dated Sept. 29, 2011 ("Johnson Decl."), Ex. B at 2.) Johnson asked Gordon whether Twenty-First had any relationship with 1861 Capital that would impair its ability to provide an independent opinion on the issue. (Johnson Decl., Ex. B at 2.) The following day, Jim Siegal ("Siegal"), Twenty-First's General Counsel, responded, asserting: "the role of Twenty-First vis-à-vis 1861 Capital is that of a referring broker. For that role, we receive a solicitation fee paid on an ongoing basis." (Johnson Decl., Ex. B at 1.)

Dr. Crawford lost his $6 million investment in the Fund. (Crawford Decl. ¶ 12.) On July 18, 2011, Dr. Crawford commenced a FINRA arbitration against Twenty-First, captioned Dr. Byron Crawford v. Twenty-First Securities Corporation, FINRA No. 11-02801. (Compl. ¶ 1.) Twenty-First filed this action on September 14, 2011 seeking a declaratory judgment that Dr. Crawford is not a customer of Twenty-First and enjoining Crawford from pursuing any claims against Twenty-First in a FINRA arbitration. (Compl. ¶ 3.)

-2-

## DISCUSSION

"A party seeking a preliminary injunction must demonstrate (1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 116 (2d Cir. 2009) (internal quotations omitted).[1]

### I. Irreparable Harm

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." Faiveley, 559 F.3d at 118 (internal quotations omitted). "To make this showing, a Plaintiff must demonstrate that absent a preliminary injunction, he will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be redressed through a monetary award." Payment Alliance Int'l, Inc. v. Ferreira, 530 F. Supp. 2d 477, 480 (S.D.N.Y. 2007) (internal quotations omitted).

The Second Circuit has held that a party seeking an injunction would be "irreparably harmed by being forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable." Merrill Lynch Inv. Managers v. Optibase, Ltd., 337 F.3d 125, 129 (2d Cir. 2003). Thus, whether Twenty-First can show irreparable harm turns on whether the dispute is arbitrable. As discussed below, this dispute is arbitrable, and therefore, Twenty-First cannot show irreparable harm.

---

[1] The Court need not address the parties' arguments regarding whether it has the power to enjoin an arbitration in another district because Twenty-First fails to establish the required elements for a preliminary injunction.

## II. Likelihood of Success on the Merits

FINRA Rule 12200 requires parties to arbitrate disputes where (1) the arbitration is required by agreement or is requested by a customer or (2) the dispute is between a customer and a FINRA member or "associated person" of a member and arises in connection with the business activities of the member or associated person. FINRA Rule 12200. Because there is no arbitration agreement here, the parties dispute only whether Crawford was a "customer" of Twenty-First.

FINRA defines a customer as anyone "not includ[ing] a broker or dealer." FINRA Rule 1200(i). Although courts in this jurisdiction have construed the term "customer" broadly, they have found that "there must be some nexus between the investor and the member or associated person in order for a party to take advantage of the [FINRA] arbitration provision." Malak v. Bear Stearns & Co., 02 Civ. 9195 (KTD), 2004 WL 213014, at *4 (S.D.N.Y. Feb. 4, 2004). Recently, the Second Circuit has found a sufficient nexus where the "customer" received advice as opposed to investment or brokerage services. See UBS Fin. Servs. v. W. Va. Univ. Hosps., --- F.3d ----, 2011 WL 4389991, at *8 (2d Cir. 2011) ("We also reject UBS's contention that FINRA has a narrow 'investor-protection mandate,' such that 'customers' should include only those receiving 'investment or brokerage services.'").

It appears Dr. Crawford was a customer of Twenty-First because he received investment advice from Gordon, its president. See W. Va. Univ. Hosps., 2011 WL 4389991, at *8; cf. also ProShares Trust v. Schnall, 695 F. Supp. 2d 76, 79-80 (S.D.N.Y. 2010) (finding an insufficient nexus where purported customers had not communicated directly with the party against whom they were seeking arbitration). Moreover, Twenty-First received compensation in

-4-

the form of a solicitation fee for referring Dr. Crawford to the Fund, another indicia of a customer relationship. Thus, on the current record, Twenty-First cannot establish a likelihood of success on the merits.

## III. Sufficiently Serious Questions Going to the Merits and Balance of Hardships Tipping Toward Plaintiff

"The 'serious questions' standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." Citigroup Global Markets Inc., v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010). "Because the moving party must not only show that there are 'serious questions' going to the merits, but must additionally establish that 'the balance of hardships tips decidedly' in its favor, its overall burden is no lighter than the one it bears under the 'likelihood of success' standard." Citigroup, 598 F.3d at 35 (internal citations omitted). Given the expansive definition of "customer" under West Virginia University Hospitals, Twenty-First also fails to raise sufficiently serious questions going to merits. See West Virginia University Hospitals, 2011 WL 4389991, at *8.

-5-

## CONCLUSION

For the foregoing reasons, Twenty-First's motion for a preliminary injunction

staying the FINRA arbitration is denied. The Clerk of the Court is directed to terminate the

motion pending at ECF No. 8.

Dated: December 15, 2011
New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

Counsel of Record:

Kevin Michael Shelley
Kaufmann Gildin Robbins & Oppenheim LLP
777 Third Avenue, 24th Floor
New York, NY 10017
(212)-755-3100
*Counsel for Plaintiff*

Steven Bruce Caruso
Maddox Hargett & Caruso, P.C.
80 Broad St, 5th Floor
New York, NY 10004
*Counsel for Defendant*